# United States Court of Appeals

### *for the*

# Fifth Circuit

---

Case No. 23-11184

UNITED STATES OF AMERICA, ex rel., ALEX DOE, Relator,

*Plaintiff-Appellee,*

v.

PLANNED PARENTHOOD FEDERATION
OF AMERICA, INCORPORATED,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS, AMARILLO

## REPLY BRIEF FOR DEFENDANT-APPELLANT

DANNY S. ASHBY
O'MELVENY & MYERS LLP
2801 North Harwood Street,
   Suite 1600
Dallas, Texas 75201
(972) 360-1900
dashby@omm.com

ANTON METLITSKY
O'MELVENY & MYERS LLP
Times Square Tower
Seven Times Square
New York, New York 10036
(212) 326-2000
ametlitsky@omm.com

LEAH GODESKY
L. NICOLE ALLAN
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067
(310) 553-6700
lgodesky@omm.com
nallan@omm.com

*Attorneys for Defendant-Appellant*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**Defendant-Appellant:**

Planned Parenthood Federation of America, Inc.
*Represented by* O'Melveny & Myers LLP
Anton Metlitsky
Leah Godesky
Danny S. Ashby
L. Nicole Allan

**Plaintiff-Appellee:**

Relator Alex Doe
*Represented by* Hacker Stephens LLP
Heather Gebelin Hacker
Andrew Bowman Stephens

**Other Parties:**

Defendant Planned Parenthood of Greater Texas, Inc.
Defendant Planned Parenthood Gulf Coast, Inc.
Defendant Planned Parenthood South Texas, Inc.
Defendant Planned Parenthood Cameron County, Inc.
Defendant Planned Parenthood San Antonio, Inc.
*Represented by* Arnold & Porter Kaye Scholer LLP
Christopher M. Odell
Craig D. Margolis
Tirzah S. Lollar
Paula R. Ramer

Alyssa Gerstner
Christian Sheehan
Emily Reeder-Ricchetti
Megan Pieper
Meghan Martin
Marcus Asner
Matthew Diton
Valarie Hays
Jayce Lane Born

*Represented by* Law Office of Blackburn & Brown, LLP
      Ryan Patrick Brown

Plaintiff State of Texas
*Represented by* Office of the Attorney General
      Ken Paxton
      Amy S. Hilton
      William David Wassdorf

United States of America, Real Party in Interest
*Represented by* United States Attorney's Office
      Kenneth G. Coffin
      J. Scott Hogan
      Jamie Yavelberg

State of Louisiana, Real Party in Interest
*Represented by* Office of the Louisiana Attorney General
      Joseph Scott St. John

/s/ *Anton Metlitsky*
Anton Metlitsky

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ..........................................................i

INTRODUCTION .................................................................................................1

ARGUMENT .........................................................................................................3

I.     PPFA'S ATTORNEY-IMMUNITY ARGUMENTS ARE
PRESERVED AND PROPERLY BEFORE THE COURT. .........................3

     A.    This Court Has Jurisdiction To Consider The District Court's
Denial Of Louisiana And Federal Immunity. ....................................4

     B.    This Appeal Is Limited To Relator's Attempt To Hold PPFA
Liable For Attorney Advice And Representation, Not Any
Other Theory Of Liability. .................................................................8

II.    RELATOR'S CLAIMS ARE BARRED INSOFAR AS THEY RELY
ON ATTORNEY CONDUCT ...................................................................10

     A.    PPFA Met Its Burden To Show That The Alleged Conduct At
Issue Fell Within The Scope Of Representation. ..............................11

     B.    Relator Cannot Evade Attorney Immunity By Claiming A
Conflict of Interest. ..........................................................................14

     C.    Relator Cannot Defend The District Court's Respondeat
Superior Holding. .............................................................................18

     D.    The FCA And Its State Analogues Do Not Override Attorney
Immunity And Do Not Apply To Attorney Advice Or
Representation. ..................................................................................24

CONCLUSION ....................................................................................................27

CERTIFICATE OF SERVICE ............................................................................29

CERTIFICATE OF COMPLIANCE ...................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpert v. Crain, Caton & James, P.C.*,
178 S.W.3d 398 (Tex. App. 2005).......................................................13

*Arredondo v. Elwood Staffing Servs., Inc.*,
81 F.4th 419 (5th Cir. 2023) ...............................................................21

*Bradt v. West*,
892 S.W.2d 56 (Tex. Ct. App. 1994)..................................................20

*Briscoe v. LaHue*,
460 U.S. 325 (1983)..............................................................................6

*Butz v. Economou*,
438 U.S. 478 (1978)....................................................................... 6, 19

*Cantey Hanger, LLP v. Byrd*,
467 S.W.3d 477 (Tex. 2015)....................................................... passim

*Chambers v. Garay*,
632 S.W.3d 51 (Tex. Ct. App. 2020)..................................................13

*Cutler v. Stephen F. Austin State Univ.*,
767 F.3d 462 (5th Cir. 2014)................................................................8

*Escobar v. Montee*,
895 F.3d 387 (5th Cir. 2018)......................................................... 8, 27

*F.D.I.C. v. Mijalis*,
15 F.3d 1314 (5th Cir. 1994)..............................................................21

*Hargrave v. Fibreboard Corp.*,
710 F.2d 1154 (5th Cir. 1983) ...........................................................10

*Hodgson v. Scarlett*,
171 Eng. Rep. 362 (C.P. 1817) ............................................................6

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
2007 WL 2615928 (S.D.N.Y. Sept. 10, 2007)...................................25

*Kelly v. Nichamoff,*
    868 F.3d 371 (5th Cir. 2017) ..................................................................22

*Landry's, Inc. v. Animal Legal Def. Fund,*
    566 S.W.3d 41 (Tex. App. 2018) ...........................................................22

*Landry's, Inc. v. Animal Legal Def. Fund,*
    631 S.W.3d 40 (Tex. 2021) ............................................................. 21, 22

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,*
    991 S.W.2d 787 (Tex. 1999) ...................................................................16

*Montalvo v. Sondes,*
    637 So.2d 127 (La. 1994) ................................................................. 5, 16

*N.Y. Life Ins. Co. v. Brown,*
    84 F.3d 137 (5th Cir. 1996) ....................................................................21

*Nat'l Sav. Bank of D.C. v. Ward,*
    100 U.S. 195 (1879) ................................................................................16

*Penalber v. Blount,*
    550 So.2d 577 (La. 1989) .........................................................................5

*Renfroe v. Jones & Assocs.,*
    947 S.W.2d 285 (Tex. Ct. App. 1997) ....................................................15

*Rogers v. Walker,*
    2017 WL 3298228 (Tex. Ct. App. Aug. 3, 2017) ...................................15

*Rollins v. Home Depot USA,*
    8 F.4th 393 (5th Cir. 2021) .....................................................................21

*Schmidt v. Cal-Dive Int'l, Inc.,*
    240 F. Supp. 3d 532 (W.D. La. 2017) .....................................................11

*Shanks v. AlliedSignal, Inc.,*
    169 F.3d 988 (5th Cir. 1999) ....................................................................4

*Templeton v. Jarmillo,*
    28 F.4th 618 (5th Cir. 2022) ................................21

*Troice v. Proskauer Rose, L.L.P.,*
    816 F.3d 341 (5th Cir. 2016)...............................4, 5

*Turner v. Upton County,*
    915 F.2d 133 (5th Cir. 1990)................................23

*United States ex rel. Schutte v. SuperValu Inc.,*
    598 U.S. 739 (2023) ...........................................24

*United States v. Clariot,*
    655 F.3d 550 (6th Cir. 2011)................................26

*United States v. Emergency Staffing Sols., Inc.,*
    2023 WL 2754347 (N.D. Tex. Mar. 31, 2023)....................24

*United States v. Hangar One, Inc.,*
    563 F.2d 1155 (5th Cir. 1977) .............................15

*United States v. Texas,*
    507 U.S. 529 (1993) .............................................7

*Vaughner v. Pulito,*
    804 F.2d 873 (5th Cir. 1986).................................11

*Yee v. City of Escondido,*
    503 U.S. 519 (1992) ...........................................26

**Statutes**

31 U.S.C. § 3729(a)(1).............................................25

42 U.S.C. § 1983 ...................................................23

**Other Authorities**

19 Moore's Federal Practice – Civil § 205.05 (2023) ............................21

**INTRODUCTION**

Relator's original allegation was that PPFA was indirectly liable for the conduct of the Affiliate Defendants under a veil-piercing theory. After discovery foreclosed that argument, however, Relator pressed a new argument at summary judgment: that PPFA is *directly* liable under the FCA and its state analogues for *its own* conduct based on a grab-bag of far-fetched theories. Central among those theories—and the only one at issue in this appeal—is that PPFA is liable because PPFA-employed L&L attorneys "masterminded" a legal strategy that would allow the Affiliate Defendants to remain Texas and Louisiana Medicaid providers despite those states' notices of termination, principally by representing the Affiliate Defendants in filing successful federal lawsuits to enjoin the terminations. The only question on appeal is whether that theory is precluded by the attorney-immunity doctrine. To ask that question is to answer it: the doctrine forecloses liability based on the legal advice and representation attorneys provide to clients, which is what Relator seeks to hold PPFA liable for.

Relator's response is largely an exercise in misdirection. He focuses on insubstantial waiver and jurisdictional arguments. And he belabors the fact that he also seeks to hold PPFA liable based on conduct other than L&L's provision of legal representation, which is true but irrelevant—again, this appeal only challenges the aspects of Relator's theory that *do* depend on holding PPFA liable for L&L

1

attorneys' "masterminding" of a legal strategy for their Affiliate-Defendant clients that principally consisted of filing successful federal suits to enjoin the Affiliate Defendants' termination from Medicaid. That conduct falls squarely within attorney immunity.

Relator's responses to *that* argument only demonstrate the weakness of his position. Relator contends that PPFA did not satisfy its burden of proving that the conduct he challenges fell within the scope of L&L's representation of the Affiliate Defendants. But Relator's own arguments make clear that the challenged conduct lies at the heart of attorney-immunity protections, which PPFA explained at length below. Relator also contends that PPFA cannot invoke attorney immunity because L&L was representing the Affiliate Defendants under an alleged conflict of interest. That argument depends on a distortion of the factual record, which shows there was no conflict. But even more important, the argument is legally baseless: it is black-letter law that third parties cannot sue attorneys for allegedly conflicted representation.

Finally, Relator defends the district court's holding that PPFA cannot invoke attorney immunity because L&L attorneys are not themselves being sued, but fails to respond at all to the wall of case law and immunity-supporting policy arguments that PPFA raised in its opening brief. Not only that, but Relator *admits* that his theory would open organizations from the AARP Foundation to Liberty Counsel to

Genesis Women's Shelter to suits by third parties for their attorney-employees' client representation. The sweep of Relator's theory is remarkable, yet all he can muster in its support is a frivolous waiver argument, a mischaracterization of a Texas Supreme Court case, and a "policy" argument that completely misunderstands how attorney immunity works and the policy interests it serves.

Meanwhile, Relator barely mentions the scope of the FCA and its state analogues, even though the statutes' scope was one ground for the district court's rejection of attorney immunity. Relator's argument that the FCA applies to "any person" ignores the myriad reasons why that language cannot be read to wipe out attorney immunity, or indeed to apply at all to the type of attorney advice and representation at issue here. While this Court can reverse the decision below by applying the attorney-immunity doctrine, it also has pendent jurisdiction to reverse on the alternative ground that the FCA and its analogues do not cover the sort of litigation conduct that Relator claims makes PPFA liable.

The decision below should be reversed.

## ARGUMENT

## I. PPFA's Attorney-Immunity Arguments Are Preserved And Properly Before The Court.

A large portion of Relator's brief does not even attempt to rebut the main argument on appeal—whether PPFA can be held liable for the legal advice and representation L&L attorneys provided the Affiliate Defendants—but instead offers

legal and factual irrelevancies concerning PPFA's purported waivers and baseless challenges to this Court's jurisdiction. The Court should recognize these arguments for what they are: meritless distractions.

### A. This Court Has Jurisdiction To Consider The District Court's Denial Of Louisiana And Federal Immunity.

Relator appears to acknowledge that this Court has collateral-order jurisdiction over an attorney-immunity denial under Texas law, *see Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 345 (5th Cir. 2016) (attorney immunity); *Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 992 (5th Cir. 1999) (litigation privilege),[1] but offers several arguments for why this Court lacks jurisdiction over PPFA's appeals of the same issue under Louisiana and federal law. Each is wrong.

1. Relator's principal argument is that this Court has not ruled that denials of Louisiana or federal attorney immunity are immediately appealable. Relator is right that this is a question of first impression in this Court, but it is an easy one. The jurisdictional question is whether these doctrines "provide[] a true immunity from

---

[1] Relator argues that PPFA did not press a defamation-related "litigation privilege" below. Relator Brief ("RB") 24-26. As PPFA explained in its opening brief, that term has also been used (including by the district court) to describe the attorney-immunity doctrine at issue in this case—i.e., the doctrine that precludes suit based on attorney advice and representation. Appellant Brief ("AB") 21-22 n.6. PPFA uses the term "attorney immunity" for avoidance of confusion, but the label is irrelevant. AB 22-33.

suit and not a simple defense to liability." *Troice*, 816 F.3d at 345 (citation omitted). They do. *See* AB 22-33 & n.10.

**Louisiana Immunity**. In *Troice*, this Court held that Texas attorney immunity is a true immunity from suit because of the policies underlying that doctrine—*viz.*, "to ensure 'loyal, faithful, and aggressive representation by attorneys employed as advocates,'" and "to avoid the inevitable conflict that would arise if [an attorney] were forced constantly to balance his own potential exposure against his client's best interest." 816 F.3d at 346 (citations omitted; alteration in original). That is exactly the same policy underlying the similar Louisiana doctrine: to further "[a]n attorney's duty … to zealously represent his client," *Penalber v. Blount*, 550 So.2d 577, 581 (La. 1989), and "prevent a chilling effect on the adversarial practice of law" and "a division of loyalty owed to a client," *Montalvo v. Sondes*, 637 So.2d 127, 130 (La. 1994). The Louisiana Supreme Court has itself described this doctrine not just as an immunity from ultimate liability but from suit: "an attorney acting on behalf of his client *may not be sued* by an adversary based on negligence or malpractice." *Id.* (emphasis added).

**Federal Immunity**. Attorney immunity under federal common law furthers the same policies. AB 29-33. Common-law immunity is rooted in the principle that "counsel should be protected in the execution of their duty in [c]ourt" and "observations made in the due discharge of that duty should not be deemed

actionable." *Hodgson v. Scarlett*, 171 Eng. Rep. 362, 363 (C.P. 1817). The Supreme Court has explained that this common-law rule "provided *absolute immunity* from subsequent damages liability for all persons—governmental *or otherwise*—who were integral parts of the judicial process," *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983) (emphasis added), and that such "*[a]bsolute immunity* is … necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation," *Butz v. Economou*, 438 U.S. 478, 512 (1978) (emphasis added).

Relator also argues waiver, but the argument fails. He admits (RB 24) that PPFA raised a federal common-law immunity below. *See* ROA.9184 (PPFA seeking summary judgment on Relator's federal claim under "general common-law limitations" on suits based on attorney advice and representation). Relator never contested that immunity below but now argues in a footnote that "PPFA cites no federal authority holding that a federal common law defense exists, much less that it should be read into a federal statute like the FCA." RB 24 n.8. But PPFA's brief explained at length the basis for this longstanding common-law immunity. AB 29-33. Relator offers no rebuttal at all. And while Relator is correct that federal common law is ultimately subject to Congress's control, RB 24 n.8, PPFA explained (at AB 43) that "[s]tatutes which invade the common law" are presumed to retain "long-established and familiar principles, except when a statutory purpose to the

contrary is evident," *United States v. Texas*, 507 U.S. 529, 534 (1993). Again, no response from Relator.

2. Relator next contends that PPFA did not raise these doctrines below as immunities to suit but rather as defenses to liability. Again, that is demonstrably false: the introductory paragraph to PPFA's attorney-immunity defense argued that "[a]s a general rule, attorneys are *immune* from civil liability to non-clients for actions taken in connection with representing a client," ROA.9180 (quotation omitted) (emphasis added), before going on to explain why that rule precludes liability under Texas, Louisiana, and federal law, ROA.9180-9188. The district court had no trouble understanding PPFA's argument, explaining that its summary-judgment order "constituted a rejection of PPFA's claims to litigation privilege and attorney immunity," and was "an immediately appealable collateral order," ROA.48281. In any event, what matters is not how PPFA labeled its defense below but the nature of the defense raised—whether it is a true immunity from suit or a defense to ultimate liability. For the Texas, Louisiana, and federal immunities at issue here, it is the former. *See supra* at 4-7.

3. Even if the Louisiana and federal attorney-immunity defenses were not immunities from suit, the Court still would have pendent appellate jurisdiction to consider them. AB 5-6, 33 n.10; PPFA MTD Opp. 18 n.4. The Court has such jurisdiction over an otherwise non-appealable aspect of an interlocutory order if "the

court will decide some issue in the properly brought interlocutory appeal that necessarily disposes of the pendent claim." *Escobar v. Montee*, 895 F.3d 387, 392-93 (5th Cir. 2018). That rule squarely applies here. There are some edge-case distinctions between the three immunity doctrines at issue, but as PPFA explained, *see* AB Part I—and as Relator does not dispute—none makes any difference here.

The only case Relator cites denied pendent jurisdiction because "common factual and legal issues [would] not be resolved" by reviewing the collateral-order and pendent claims together, *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 468 (5th Cir. 2014), but that is not true here. If the Court rules for PPFA on the Texas attorney-immunity doctrine, it will "necessarily dispose" of the Louisiana and federal attorney-immunity defenses as well, *Escobar*, 895 F.3d at 393: there would be no basis for this Court to conclude that Texas attorney immunity applies but Louisiana or federal immunity—pertaining to claims based on the exact same allegations—does not.

## B. This Appeal Is Limited To Relator's Attempt To Hold PPFA Liable For Attorney Advice And Representation, Not Any Other Theory Of Liability.

Relator spends much of his brief arguing that some of his allegations against PPFA do not turn on attorney conduct or representation. RB 41-45. That is undisputed, AB 14, and irrelevant. Those allegations do not implicate the attorney-immunity doctrine. While PPFA believes (and will argue in a final-judgment appeal

8

if necessary) that Relator's other allegations are legally insufficient to support "causing" liability under the FCA and its analogues, they are not on appeal here. What *is* on appeal is whether Relator can proceed against PPFA based on its theory that L&L attorneys violated the FCA and its analogues by (in Relator's words) "masterminding and orchestrating a strategy … to enable Affiliate Defendants to continue to seek reimbursement from Texas and Louisiana Medicaid" by, for example, representing the Affiliate Defendants in seeking injunctions in Texas and Louisiana. ROA.10324-10325. The question is whether PPFA is subject to suit for *that* conduct, and the answer is no.

It is not entirely clear why Relator is raising the aspects of his claims that are not relevant to this appeal.[2] Relator argued in his jurisdictional motion to dismiss that the existence of allegations unrelated to attorney advice and representation deprive this Court of jurisdiction over the aspects of the case that seek to hold PPFA liable for attorney advice and representation. PPFA explained at length in its opposition to that motion (which has been carried with the case) the several reasons why Relator's argument fails, including that Relator's conspiracy claim as framed at

---

[2] Relator's assertion that PPFA is a healthcare provider is particularly confusing. *See* AB 1 n.1, 7. Relator has conceded that PPFA does not submit Medicaid claims. ROA.18504-18505; *see also* ROA.18377-18379.

summary judgment turned entirely on attorney advice and representation. *See* PPFA MTD Opp. 16-18.

Relator improperly seeks to recharacterize his conspiracy claim on appeal, *see, e.g., Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983) (holding that party "abandoned … alternative theories of recovery" on appeal by "failing to present them to the trial court" in opposition to a summary-judgment motion), but in the end it does not matter. PPFA is only appealing the district court's ruling insofar as it denied PPFA's immunity against the allegations concerning attorney advice and representation—over which this Court has collateral-order jurisdiction—and not the aspects of the district court's opinion denying PPFA's motion as to other conduct, over which the Court would lack collateral-order jurisdiction. Relator offers no argument for how a collateral-order appeal of a specific immunity from suit could possibly be defeated by larding up a complaint with additional allegations. Nor does he explain what other relevance the pages and pages of his answering brief dedicated to his non-attorney-representation allegations could possibly have. Notwithstanding those separate allegations, PPFA should not be required to face a trial for the allegations actually at issue in this appeal.

## II. Relator's Claims Are Barred Insofar As They Rely On Attorney Conduct.

On the merits, Relator's contention that attorney immunity does not apply here is wrong for numerous reasons. And in any event, Relator's brief confirms that

10

there is no plausible basis to read the FCA and its state analogues to reach attorney advice and representation in the first place.

### A. PPFA Met Its Burden To Show That The Alleged Conduct At Issue Fell Within The Scope Of Representation.

Relator first contends that PPFA failed to satisfy its burden of proving attorney immunity applies. Relator did not make that argument below, so it is waived. *See Vaughner v. Pulito*, 804 F.2d 873, 877 n.2 (5th Cir. 1986). It is also meritless.

PPFA agrees with Relator that it bears "the burden to prove that [L&L's] alleged wrongful conduct, regardless of whether it is labeled fraudulent, is part of the discharge of [L&L's] duties to [its] client," *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 484 (Tex. 2015)—i.e., that the L&L conduct Relator alleged at summary judgment "was within the scope of [L&L's] legal representation of [the Affiliate Defendants] in the [termination] proceedings," *id.*; *see also Schmidt v. Cal-Dive Int'l, Inc.*, 240 F. Supp. 3d 532, 547 (W.D. La. 2017) (immunity attaches to attorneys' conduct "[within] their role as … attorneys").[3] That burden was easily satisfied—in large part based on Relator's own allegations.

---

[3] As PPFA explained, Louisiana has a specific-malice exception to its attorney-immunity doctrine, AB 26-28, but Relator failed to allege any specific malice below or in its appellate brief, where it never even acknowledged the standard. Whether federal attorney immunity is absolute (as in Texas) or qualified (as in Louisiana), PPFA has necessarily met its burden to establish its application here as well.

Relator argued at summary judgment that PPFA "caused" the Affiliate Defendants to violate the FCA and its analogues by "masterminding" a legal strategy involving (1) "steer[ing]" Affiliate Defendants into federal court; (2) helping them request a grace period from Texas; (3) helping them file an "unsuccessful lawsuit in Travis County District Court"; (4) helping PPGC oppose Louisiana's request to vacate the *Kliebert* injunction post-*Kauffman*; and (5) "continu[ing] to represent and assist Affiliate Defendants" in the instant litigation. ROA.10326-10327. Relator's conspiracy allegations were similar—for example, that "PPFA" (i.e., L&L) and the Affiliate Defendants agreed "to use the courts, either by asking through [L&L] for relief they knew was unsupported or by avoiding updating the court as to developments directly impacting the legal basis for their claims, to extend the amount of time they could bill Medicaid under preliminary or temporary injunctions, even though they knew or were recklessly indifferent to the fact that they were no longer Medicaid providers under state law." ROA.10348.

PPFA's summary-judgment briefing took on and satisfied the burden of proving the self-evident point that these L&L actions fall "within the scope of [L&L's] legal representation" of the Affiliate Defendants, *Cantey Hanger*, 467 S.W.3d at 484. ROA.8568 (section titled "Every part of the 'strategy' Plaintiffs claim L&L 'masterminded' fell within the scope of L&L's representation of the Affiliate Defendants.").

Relator's argument that PPFA failed to present evidence "explaining the contours of L&L's representation of the Affiliates" or showing that "L&L limited their work solely to legal services," RB 46, makes no sense. The legal question is whether "the *type* of conduct alleged falls" within the scope of L&L's representation. *Cantey Hanger*, 467 S.W.3d at 485 (emphasis in original). And Relator's *own argument* is that L&L caused the Affiliate Defendants to violate the FCA and its analogues by "*represent[ing them]*"—by which he means filing lawsuits, making legal arguments, and negotiating with the Affiliate Defendants' opponents—"in the underlying termination litigation and related matters." ROA.10326 (emphasis added). PPFA explained why those allegations (obviously) are the "type of" conduct that falls "within the scope of" L&L's representation of the Affiliate Defendants. *Cantey Hanger*, 467 S.W.3d at 485; *see, e.g*, *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 408 (Tex. App. 2005) (claim against attorney for conspiracy to defraud not actionable where "complained-of actions involve the filing of lawsuits and pleadings, the providing of legal advice upon which the client acted, and awareness of settlement negotiations") (quoted in *Cantey Hanger*, 467 S.W.3d at 484); *Chambers v. Garay*, 632 S.W.3d 51, 63-64 (Tex. Ct. App. 2020) (filing lawsuits and motions are "actions [taken] in representing [a] client" and thus protected by attorney immunity). PPFA thus "conclusively established" that this conduct is "protected by attorney immunity." *Cantey Hanger*, 467 S.W.3d at 485.

Relator also contends that PPFA did not invoke attorney immunity as to Relator's conspiracy claim.  RB 47.  He made the same argument in his motion to dismiss this appeal and it remains wrong for the same reasons PPFA explained in its opposition.  *See* PPFA MTD Opp. 12-15.  Certainly, the district court had no trouble understanding this point, explaining that PPFA's defense applied to *both* remaining claims because they are "predicated on alleged litigation strategies, conduct, and legal maneuvering—orchestrated by PPFA's L&L department—to 'cause' the submission of allegedly false claims and to conspire to violate … state law." ROA.48284.

## B. Relator Cannot Evade Attorney Immunity By Claiming A Conflict of Interest.

In the end, Relator does not dispute that giving clients advice about what forum to litigate in or representing them in litigation are routine "part[s] of the discharge of [a] lawyer's duties in representing his or her client." *Cantey Hanger*, 467 S.W.3d at 481 (citation omitted); *see* AB 22-29.  Rather, Relator argues—again, improperly for the first time on appeal—that L&L's representation of the Affiliate Defendants is not covered by attorney immunity based on the entirely unsupported assertion that "lawyer immunity (or a defense based on lawyer conduct) does not apply when the lawyer is … pressing [his client] to act pursuant to a strategy that benefits the lawyer's corporate employer."  RB 29.  This argument is not only waived, but wrong on the law and the facts.

14

1. There is no exception to attorney immunity for supposedly conflicted representation. Relator cites *United States v. Hangar One, Inc.*, 563 F.2d 1155 (5th Cir. 1977), for the proposition that attorney immunity "does not apply when the lawyer is not exclusively representing a client, but rather pressing an entity to act pursuant to a strategy that benefits the lawyer's corporate employer." RB 29. But *Hangar One* has nothing to do with attorney immunity; it does not even involve attorney conduct. *Hangar One* stands only for the general proposition that a corporation may be subject to respondeat superior liability under the FCA for its employees' actions. Relator cites *nothing* for the proposition that purportedly conflicted representation somehow vitiates attorney immunity.

The actual law refutes Relator's argument. "Even conduct that is possibly *unethical* or wrongful in the context of the underlying suit is not actionable by the non-client when it is 'part of the discharge of the lawyer's duties in representing his or her client.'" *Rogers v. Walker*, 2017 WL 3298228, at *6 (Tex. Ct. App. Aug. 3, 2017) (quoting *Cantey Hanger*, 467 S.W.3d at 481) (emphasis added). Because "[a]n attorney's duties that arise from the attorney-client relationship are owed only to the client, not to third persons, such as adverse parties," a third party has "no right of action against [an] attorney for any injuries they suffer because of the attorney's fault in performing duties"—such as the duty of loyalty, RB 29—"owed only to the client." *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 287 (Tex. Ct. App. 1997); *see,*

*e.g.*, *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 792 (Tex. 1999) ("an attorney is not liable for malpractice to anyone other than her client"). The same rule applies in Louisiana, *Montalvo*, 637 So.2d at 130 (non-client "cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation"), and under federal common law; the Supreme Court recognized nearly 150 years ago "the general rule … that the obligation of the attorney is to his client and not to a third party," so only the client and not a third party can sue the attorney for tortious representation, *Nat'l Sav. Bank of D.C. v. Ward*, 100 U.S. 195, 200 (1879). Relator fails to recognize this established rule, let alone offer any reason it would not apply here.

2. The argument is also refuted by the undisputed facts. The allegation that L&L attorneys "advised the Affiliates to take actions against the Affiliates' own interests," RB 2, is foreclosed by the unrebutted testimony of the Affiliate Defendants themselves, all of whom stated that they made the strategic decision to challenge the Medicaid terminations in federal court because it was in their interest to do so. AB 9, 51-52 (describing and quoting testimony). PPFA emphasized this testimony below, ROA.9185, ROA.9188-9190, and in its opening brief, AB 9, 51-52, without any response from Relator. And Relator's assertion that "PPFA's corporate witness was unaware of any conflict waivers obtained by PPFA's attorney-employees" (RB 30) grossly mischaracterizes her testimony, which was that she was

not aware of any *conflicts* that had arisen between PPFA and the affiliates, ROA 19997-19998.

It is similarly beyond dispute that the affiliates "are the sole deciders" regarding "litigation strategy with [L&L]" and that PPFA has no control over whether L&L represents affiliates in a given matter. ROA.20231-20232 (cited at AB 7-8, 51). Relator's failure to respond to these undisputed facts suffices to foreclose its conflict-of-interest argument.[4] And the suggestion that this strategy was contrary to the Affiliate Defendants' interest is also belied by the fact that it allowed them to continue providing high-quality Medicaid services for four years in

---

[4] Relator is wrong when he asserts that L&L is prohibited from representing affiliates in "other forms of litigation" not approved by PPFA. RB 37. An affiliate's membership in PPFA allows it to seek legal advice and representation from L&L on certain public-policy related matters, *see* ROA.18284—not slip-and-fall suits, which was the subject of the testimony Relator cites, ROA.19998. And while it's true that L&L does not take on cases with no Planned Parenthood connection, it is clear from the underlying Medicaid termination litigations here—in which L&L represented individual Medicaid-beneficiary plaintiffs as well as the Affiliate Defendants—that L&L sometimes represents non-PPFA or affiliate clients. *See, e.g.*, *Planned Parenthood of Greater Tex. Fam. Plan. & Preventative Health Servs., Inc. v. Smith*, No. 1:15-cv-01058-LY, ECF No. 1 (W.D. Tex. Nov. 23, 2015).

Relator's assertion that "PPFA decides whether the affiliates will settle or defend" "lawsuits filed against affiliates" (RB 38) is also not supported by the cited source, which concerns an advisory panel outside of PPFA that makes recommendations based on "clinical, legal and insurance perspectives." ROA.28555. Nothing in the record or elsewhere supports the false proposition that anyone other than the affiliates decides when to settle a case.

Texas, and for PPGC to remain a provider in good standing in Louisiana to this day. AB 9-11.

Relator's argument also makes no sense even on its own terms. He says that L&L's representation of the Affiliate Defendants was conflicted because it was "in service to PPFA's mission," RB 2, but PPFA and its member-affiliates share a mission of ensuring access to comprehensive reproductive and complementary healthcare services, ROA.18250; ROA.18276. PPFA is made up of its affiliate members, who appoint PPFA's board of directors, approve changes to its bylaws and Standards of Affiliation, and determine the amount each affiliate pays in annual dues. ROA.8335-8336. If the member-affiliates wanted to change PPFA's mission, they could do so by amending its bylaws. ROA.20011. Apart from being legally irrelevant and factually unsupported, Relator's conflict argument is based on a basic misunderstanding of PPFA's structure.

### C. Relator Cannot Defend The District Court's Respondeat Superior Holding.

Relator also attempts to defend the district court's decision that PPFA cannot invoke attorney immunity because L&L attorneys are not being sued directly. RB 26-36. PPFA has explained at length why that holding was wrong as a straightforward doctrinal matter, AB 34-37, and irreconcilable with the policy on which attorney immunity is based, AB 37-42. Relator does not respond to those arguments.

Indeed, Relator affirmatively *concedes* that under his theory, organizations from the AARP Foundation to Liberty Counsel to Genesis Women's Shelter would be subject to suit by third parties for providing attorney advice and legal representation to other third parties, as those and other organizations routinely do. RB 33-34. Relator is unconcerned, however, because he asserts that those organizations "do not use their attorney-employees to help corporate affiliates, whom they control through various means, to commit fraud or evade Medicaid requirements." RB 34. At the risk of stating the obvious, that response misses the point.

As an initial matter, accepting Relator's argument would subject these organizations to suit not just under the FCA but under any cause of action. More important, attorney immunity does not exist to protect attorneys who violate the law; it exists to ensure that attorneys can zealously advocate for their clients "without harassment or intimidation." *Butz*, 438 U.S. at 512; *see* AB 23. If the AARP Foundation, Liberty Counsel, Genesis Women's Shelter—or PPFA—could be sued for legal advice/representation of third parties by lawyers they employ, those lawyers would be deterred from providing zealous representation just as much as if a law firm could be sued for its attorneys' advice and representation. AB 37-38.[5] Relator's

---

[5] Courts have recognized that the risk of such suits in circumstances such as these—where counsel for Relator was also opposing counsel to the Affiliate Defendants in the underlying Texas termination litigation—is especially pernicious.

suggestion that law firms are different because they are "comprised of (and owned by) lawyers" (RB 33) is a non sequitur—immunity applies regardless of whether the attorney who provided the challenged representation is an owner of the firm—and fails to answer the point that these and similar organizations would be left defenseless against even meritless or retributive law suits under any cause of action. Relator offers no plausible argument for a theory of attorney immunity so irreconcilable with its purpose.

Against this weight of precedent and policy, Relator offers only insubstantial responses that should be rejected.

1. Relator first argues that PPFA has forfeited any response to the argument that it cannot assert attorney immunity because it is not an attorney or a law firm. RB 33. Nonsense. PPFA did not respond to this argument below (RB 26-27) because it had no opportunity to do so—Relator made the argument for the first time in its reply brief, ROA.27066. More fundamentally, the district court expressly held—at Relator's urging—that PPFA cannot invoke attorney immunity because Relator "do[es] not purport to attach personal liability to the individual L&L lawyers' representation of Affiliate Defendants." ROA.46682. It is black-letter law

_____

*See Smith*, ECF No. 147 (May 20, 2017). That is why such suits are precluded altogether. *See Bradt v. West*, 892 S.W.2d 56, 72 (Tex. Ct. App. 1994) ("An attorney should not go into court knowing that he may be sued by the other side's attorney for something he does in the course of representing his client.").

that "[a]lthough issues not raised before the district court are generally waived, an argument is not waived on appeal if the argument on the issue before the district court was sufficient to permit the district court to rule on it." *Arredondo v. Elwood Staffing Servs., Inc.*, 81 F.4th 419, 429 (5th Cir. 2023); *see also* 19 Moore's Federal Practice – Civil § 205.05 (2023) (district-court ruling on an issue "fully reviewable on appeal even though no party raised it below"). Relator appears not to be aware of this established rule, instead citing inapposite cases where the district court *did not rule on the issue*. *See* RB 25, 33 (citing *Rollins v. Home Depot USA*, 8 F.4th 393, 397-98 (5th Cir. 2021); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 n.4 (5th Cir. 1996); *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1326-27 (5th Cir. 1994); *Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022)). Relator's waiver argument fails.

2. Relator ignores the many authorities PPFA cited to show that Texas, Louisiana, and federal law establish that PPFA is entitled to the same immunity as its L&L employees. AB 35-37, 39-40. The only authority Relator engages with is *Landry's, Inc. v. Animal Legal Defense Fund*, 631 S.W.3d 40 (Tex. 2021), which he blatantly mischaracterizes. Relator claims that the "Supreme Court of Texas recently declined to extend the [attorney-immunity] defense outside th[e] narrow context" of liability for lawyers and law firms and "reaffirmed that the defense applies narrowly." RB 31-32. But the Texas Supreme Court did not decline to *extend* attorney immunity to "a nonprofit organization, not an attorney"; it declined

21

to *consider* whether that immunity covers such organizations because the court resolved the case on alternative grounds. *Landry's*, 631 S.W.3d at 51 n.12.

Indeed, far from "reaffirm[ing]" the "narrow[]" nature of the defense, RB 32, the Texas Supreme Court has repeatedly rejected requests to limit the inherently broad scope of attorney immunity. *See* AB 37 n.11 (citing cases). The fact that the Texas Supreme Court declined to consider whether attorney immunity applies to a non-law-firm employer in a case where the question did not matter says nothing about how the Court would rule on that issue in a case where it does matter. If anything, the fact that the Texas intermediate appellate court in *Landry's* held that immunity *did* apply to the attorney's employer, *see Landry's, Inc. v. Animal Legal Def. Fund*, 566 S.W.3d 41, 61 (Tex. App. 2018) ("Attorney immunity … extends to the organizations through which attorneys render legal services."), is good evidence that the Texas Supreme Court would agree in an appropriate case. *See Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017) (the Court treats "state intermediate courts' decisions as the strongest indicator of what [the Texas Supreme Court] would do" when it comes to Texas attorney immunity).

3. Finally, Relator argues that applying immunity in this context would "gut" the Medicaid fraud statutes because "[f]uture corporations will manufacture similar immunity claims—replete with interlocutory appeals—by simply designating attorney-employees to process and submit false claims." RB 18; *see also* RB 35-36.

To state the obvious, the L&L conduct at issue here did not involve submission of claims but rather litigation conduct including filing, briefing, and arguing legal challenges in federal court, including this Court. At any rate, Relator's argument fundamentally misunderstands how attorney immunity works. Attorney immunity does not preclude suit for any conduct simply because an attorney is involved; a corporation that processes and submits false claims would be directly liable under the FCA and its analogues regardless of whether a lawyer was doing the processing or submitting, so there is no danger of "gutting" those statutes. If a corporation provides legal advice to third parties, that advice is not subject to suit; if that corporation makes false statements to the government, attorney immunity has nothing to do with it regardless of who makes the statement.

That is also why *Turner v. Upton County*, 915 F.2d 133 (5th Cir. 1990), is irrelevant. *Turner* was a Section 1983 suit in which a district attorney allegedly conspired with police to falsely convict a defendant, and the Court held that the county could be sued for the district attorney's conduct only if it was done pursuant to policy (as opposed to a respondeat superior theory). *Id.* at 137. The county was not being sued for legal advice or representation that its district attorney provided a third party. So Relator is right that "government entities can be liable under 42 U.S.C. § 1983 for actions by [their] attorney-employees" in some circumstances, RB 28, *but not for legal representation or attorney advice to third parties*.

*United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739 (2023), is inapposite for the same reason. The legal and factual statements in that case about "what our 'usual and customary' prices are," *id.* at 757 (emphasis omitted), were made by the company-defendant to the government. Whether those statements were made by lawyers does not matter—the company is liable for its own statements, whoever makes them. *SuperValu* has nothing to do with whether companies can be held liable for the legal advice or representation their attorneys provide to third parties, which is the only question here.

On *that* question, the policy runs entirely counter to Relator's position for the reasons already explained. Relator's (and the district court's) restricted view of the scope of attorney immunity should thus be rejected.

## D. The FCA And Its State Analogues Do Not Override Attorney Immunity And Do Not Apply To Attorney Advice Or Representation.

1. The district court's second ground for rejecting attorney immunity was statutory—*viz.*, that the FCA and its analogues apply to anyone who "causes" the submission of a false claim even if that person "just so happens to be a lawyer." ROA.46682.[6] Relator parrots that reasoning, stating that the FCA "does not exempt

---

[6] Relator does not dispute that the FCA and its state analogues are materially identical, *see* AB 45 n.18, and that the statutory analysis applies to each equally. "Absent allegations about how a state law differs from the FCA—which [Relator] has not pled here—courts interpret state false claims laws consistently with the FCA." *United States v. Emergency Staffing Sols., Inc.*, 2023 WL 2754347, at *7

any particular type of employee's actions, instead attaching liability broadly to 'any person.'"  RB 27 (quoting 31 U.S.C. § 3729(a)(1)).  But PPFA's opening brief explained at length why that is wrong: (i) federal, Texas, and Louisiana courts do not read statutes to override common-law defenses absent a clear indication of legislative intent to override them; (ii) the *Noerr-Pennington* doctrine and related principles counsel against reading even broad language to cover petitioning activity such as filing lawsuits and seeking administrative relief; and (iii) attorney advice and representation do not "cause[]" a client to do anything, least of all make a false claim, 31 U.S.C. § 3729(a)(1).  AB 43-53.

Relator offers no response other than a waiver argument, contending that PPFA "never argued below" that the FCA and its analogues do not cover the attorney conduct alleged.  RB 27.  That is wrong twice over.

*First*, PPFA did raise this argument, arguing that in "analogous context[s]," courts had held that "'[i]n no sense can an attorney giving legal advice to a person or corporation making a statement, or assisting in its drafting, be understood to cause the statement to be made' because an attorney does not 'control' her client." ROA.9182 (quoting *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2007 WL 2615928, at *12 (S.D.N.Y. Sept. 10, 2007), and citing other cases).  That is the

---

(N.D. Tex. Mar. 31, 2023).

same argument PPFA makes here, citing the same cases. AB 50-51. PPFA did not specifically identify the *Noerr-Pennington* doctrine by name, but that does not matter: PPFA unquestionably argued that the FCA and its analogues do not encompass attorney advice and representation, and once a "claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992).

*Second*, and in any event, *the district court itself* raised the statute's scope as one of two reasons that the attorney-immunity doctrine does not bar Relator's claims. ROA.46682. And "[w]hen a district court resolves an issue, the losing party can challenge it." *United States v. Clariot*, 655 F.3d 550, 556 (6th Cir. 2011) (Sutton, J.); *see supra* at 21. PPFA is entitled to offer on appeal all the reasons why the district court's statutory interpretation is incorrect.

Relator's waiver argument thus fails, while its nonexistent response on the merits is telling. Reading the FCA and its analogues to cover attorney advice and representation would be unprecedented—Relator does not cite a single case, ever, that has done so—and should be rejected for the several unrebutted reasons PPFA explained in its opening brief.

2. That conclusion is enough to refute the district court's and Relator's position that the FCA and its analogues override attorney immunity. AB 53. But it

also affords the Court an alternative basis to reverse the decision below on an even more basic ground: the statutes simply do not encompass attorney advice and representation, so Relator's claims fail on the merits.

PPFA explained at length why that issue falls within this Court's pendent appellate jurisdiction. AB 54-55. Relator offers no response other than a sentence asserting without explanation that these issues are not "inextricably intertwined." RB 4. But they are: whether the statutes apply to attorney advice and representation is squarely implicated by PPFA's collateral-order attorney-immunity claim, and once the Court resolves that question, the answer "necessarily disposes of the pendent claim," *Escobar*, 895 F.3d at 392-93. This Court can reverse the decision below on this alternative basis.

## CONCLUSION

The decision below should be reversed to the degree it denied summary judgment as to conduct predicated on L&L's legal advice and representation.

Respectfully submitted,

/s/ *Anton Metlitsky*

Danny S. Ashby     Anton Metlitsky
O'MELVENY & MYERS LLP  O'MELVENY & MYERS LLP
2801 N. Harwood Street   7 Times Square
Dallas, TX 75201     New York, NY 10036
Tel: (972) 360-1904    Tel: (212) 326-2291
dashby@omm.com    ametlitsky@omm.com

            Leah Godesky
            L. Nicole Allan
            O'MELVENY & MYERS LLP
            1999 Avenue of the Stars
            Los Angeles, CA 90067
            Tel: (310) 246-8501
            lgodesky@omm.com
            nallan@omm.com

*Counsel for Planned Parenthood Federation of America, Inc., Defendant-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2024, an electronic copy of the foregoing document was filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit and served on counsel for Plaintiff-Appellee using the appellate CM/ECF system.

/s/ *Anton Metlitsky*
Anton Metlitsky

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit and the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,491 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(7)(B)(i) and Fed. R. App. P. 32(a)(5), and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally-spaced typeface using Microsoft Word in size 14 font in Times New Roman.

/s/ *Anton Metlitsky*
Anton Metlitsky
Counsel for Defendant-
Appellant Planned Parenthood
Federation of America, Inc.

Dated: March 4, 2024