# United States Court of Appeals

*for the*

# Fifth Circuit

---

Case No. 23-11184

UNITED STATES OF AMERICA, ex rel., ALEX DOE, Relator,

*Plaintiff-Appellee,*

v.

PLANNED PARENTHOOD FEDERATION
OF AMERICA, INCORPORATED,

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS, AMARILLO

## RESPONSE TO PETITION FOR REHEARING *EN BANC*

DANNY S. ASHBY
O'MELVENY & MYERS LLP
2801 North Harwood Street,
   Suite 1600
Dallas, Texas 75201
(972) 360-1904
dashby@omm.com

ANTON METLITSKY
O'MELVENY & MYERS LLP
1301 Avenue of the Americas,
   Suite 1700
New York, New York 10019
(212) 326-2291
ametlitsky@omm.com

LEAH GODESKY
L. NICOLE ALLAN
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067
(310) 246-8501
lgodesky@omm.com
nallan@omm.com

*Attorneys for Defendant-Appellant*

CP COUNSEL PRESS     (800) 4-APPEAL • (379887)

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**Defendant-Appellant:**

Planned Parenthood Federation of America, Inc.
*Represented by* O'Melveny & Myers LLP
    Anton Metlitsky
    Leah Godesky
    Danny S. Ashby
    L. Nicole Allan

**Plaintiff-Appellee:**

Relator Alex Doe
*Represented by* Hacker Stephens LLP
    Heather Gebelin Hacker
    Andrew Bowman Stephens

**Other Parties:**

Defendant Planned Parenthood of Greater Texas, Inc.
Defendant Planned Parenthood Gulf Coast, Inc.
Defendant Planned Parenthood South Texas, Inc.
Defendant Planned Parenthood Cameron County, Inc.
Defendant Planned Parenthood San Antonio, Inc.
*Represented by* Arnold & Porter Kaye Scholer LLP
    Christopher M. Odell
    Craig D. Margolis
    Tirzah S. Lollar
    Paula R. Ramer
    Alyssa Gerstner
    Christian Sheehan

Emily Reeder-Ricchetti
Megan Pieper
Meghan Martin
Marcus Asner
Matthew Diton
Valarie Hays
Jayce Lane Born

*Represented by* Law Office of Blackburn & Brown, LLP
　　Ryan Patrick Brown

Plaintiff State of Texas
*Represented by* Office of the Attorney General
　　Ken Paxton
　　Amy S. Hilton
　　William David Wassdorf

United States of America, Real Party in Interest
*Represented by* United States Attorney's Office
　　Kenneth G. Coffin
　　J. Scott Hogan
　　Jamie Yavelberg

State of Louisiana, Real Party in Interest
*Represented by* Office of the Louisiana Attorney General
　　Joseph Scott St. John

/s/ *Anton Metlitsky*
Anton Metlitsky

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................... 1

BACKGROUND ................................................................................. 4

REASONS TO DENY THE PETITION ............................................... 9

A.    Relator's Contention That The Panel's Opinion "Guts" The FCA And Its State Analogues Is Based On A Mischaracterization Of That Opinion ....................................................................................... 10

B.    Relator's Contention That The Panel Improperly Reviewed An Interlocutory District-Court Ruling Involving Factual Disputes That Preclude Summary Judgment Is Incorrect, And Would Not Support En Banc Review Even If It Were Right ....................................... 15

CONCLUSION .................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Behrens v. Pelletier*,
   516 U.S. 299 (1996) ................................................................. 8

*Bill Johnson's Rests., Inc. v. N.L.R.B.*,
   461 U.S. 731 (1983) ............................................................... 14

*Briscoe v. LaHue*,
   460 U.S. 325 (1983) ............................................................... 14

*Butz v. Economou*,
   438 U.S. 478 (1978) ............................................................... 14

*DeWitt v. Harris County*,
   904 S.W.2d 650 (Tex. 1995) ................................................... 11

*Hodgson v. Scarlett*,
   171 Eng. Rep. 362 (C.P. 1817) .............................................. 14

*Kinney v. Weaver*,
   367 F.3d 337 (5th Cir. 2004) ................................................. 15

*Knutson v. Morton Foods, Inc.*,
   603 S.W.2d 805 (Tex. 1980) ................................................... 11

*Landry's, Inc. v. Animal Legal Def. Fund*,
   631 S.W.3d 40 (Tex. 2021) ..................................................... 11

*Mi Familia Vota v. Ogg*,
   105 F.4th 313 (5th Cir. 2024) .................................................. 8

*New Orleans & N.E.R. Co. v. Jopes*,
   142 U.S. 18 (1891) .................................................................. 9

*Troice v. Proskauer Rose, L.L.P.*,
   816 F.3d 341 (5th Cir. 2016) ................................................... 7

## INTRODUCTION

Relator is seeking en banc review of an opinion the panel did not write, and indeed that no court would plausibly issue. The panel did not hold that a corporation can avoid False Claims Act ("FCA") liability by involving a lawyer in wrongdoing. What the panel held is that *lawyers themselves* (and their employers, if sued on a vicarious-liability theory for the lawyers' conduct) are immune from suit when the theory of liability is based on *attorney advocacy*. In this case, Relator alleges that attorneys working in Planned Parenthood Federation of America's ("PPFA's") Litigation & Law department ("L&L")—a captive law firm within PPFA that represents PPFA affiliates, including the Affiliate Defendants—"masterminded" and executed a litigation strategy for their clients (the Affiliate Defendants) to (successfully) seek district-court injunctions against the Affiliate Defendants' termination from Texas and Louisiana Medicaid; defend those injunctions in this Court; and petition administrative agencies for relief. Relator tried to hold PPFA liable vicariously for actions by L&L lawyers that lie at the heart of attorney-immunity protections, arguing that the lawyers violated the FCA and its state analogues by creating and (at their clients' directive) executing a federal legal strategy rather than using state administrative procedures. The panel correctly held that attorney immunity precludes that theory.

1

Relator's argument that the unanimous panel decision "blow[s] a hole in the FCA" (Pet. iv) is based on a mischaracterization of the opinion. If a corporation's filing of a false claim involved lawyers, the opinion does not immunize the corporation from FCA liability, because that theory is not predicated on attorney advice or litigation conduct—it is based on the filing of a false claim. For the same reason, if an attorney's advice or litigation conduct caused the client (including a corporation the attorney works for) to make a false claim, the panel opinion does not immunize the client from FCA liability.[1] Indeed, the opinion does not even immunize it from liability *in this case* to the extent Relator argues that PPFA caused the Affiliate Defendants to make false claims because "PPFA was involved in the Affiliates' businesses to a degree that shows they were aware of the fraudulent activity and did nothing to stop it." Pet. 10. That theory is meritless for many reasons that are not before the Court on this collateral-order appeal, but not because it is precluded by attorney immunity.

The panel opinion could not have been clearer on this point—it held that PPFA is immune from liability "to the extent [Relator's claims] *turn on the actions or advice of the L&L attorneys*," Pet.App. 21 (emphasis added), including devising and executing a litigation strategy on behalf of L&L's clients. Relator's sky-is-

---

[1] PPFA does not provide healthcare services or file Medicaid claims, so Relator does not allege that PPFA itself made any false claims.

falling rhetoric aside, the panel's opinion falls squarely in the heartland of attorney immunity, which is (in Relator's words) "designed to allow attorneys to zealously represent their clients" (Pet. iv) without fear that a third party like Relator will then seek to hold the attorneys or their employer liable for doing so.

The panel's decision is thus undoubtedly correct—Relator does not even offer a substantive argument against the actual opinion, as opposed to the one he invented. And indeed, the panel opinion simply reaffirms the established principle that attorney representation cannot form the basis for liability. But the theory of liability the panel opinion *precludes* is entirely unprecedented—Relator has never cited (and PPFA is not aware of) a single case in which FCA liability has been predicated on attorneys recommending and executing a plan to file lawsuits or seek administrative relief. The doctrine of attorney immunity is indeed "narrow," Pet. iv, but it is a centuries-old principle designed to preclude exactly the type of claim Relator attempted to bring here—which is presumably why no one appears to have ever tried to bring such a suit before. The real sea change would be if the panel had come out the other way, inviting new suits challenging attorney representation that have never been tried before.

The petition thus does not justify the use of the "extraordinary" en banc procedure, Circuit IOP 40.2.1, because it does not implicate "an error of exceptional public importance" or "conflict[] with prior Supreme Court, Fifth Circuit or state

law precedent," *id.* at 36.  Instead, it asks this Court to strip long-established protections for conduct at the heart of attorney immunity.  The petition should be denied.

## BACKGROUND

1.  PPFA is a non-profit membership organization that does not itself provide healthcare services, but supports local affiliates that do.  Pet.App. 2.  L&L is a captive law firm within PPFA that provides legal advice and representation on certain public-policy-related matters primarily to PPFA's affiliates, and also at times to PPFA.  ROA.20257-20258.  Although L&L attorneys are employed by PPFA, they have separate duties of loyalty and confidentiality to each of their clients, along with privileged attorney-client relationships.  ROA.18284-18285.

In 2015, Louisiana and Texas sought to terminate three of PPFA's affiliate members (the "Affiliate Defendants") from the states' respective Medicaid programs.  Pet.App. 2-3.  In response, the Affiliate Defendants and individual Medicaid beneficiaries, represented by attorneys including L&L, filed suit and obtained two different federal-court orders enjoining the states from terminating them from Medicaid.  *Id.* 3.  One of these injunctions was upheld by a panel of this Court, but one was vacated several years later by the en banc Court on procedural grounds.  *Id.*  While the injunctions were in place, the Affiliate Defendants remained

enrolled Medicaid providers,[2] providing (and receiving reimbursement for) birth control, cancer screenings, and other healthcare services to Medicaid patients.

Plaintiff-Appellant Alex Doe ("Relator") brought suit against the Affiliate Defendants under the FCA and its Texas and Louisiana analogues. *Id* 3-4. His principal claim against the Affiliate Defendants is that once the en banc Court vacated the Texas (but not the Louisiana) injunction on procedural grounds, the Affiliate Defendants were required to repay the reimbursements they received for medical care they provided while the injunctions were in place, and their failure to do so violated the statutes' reverse-false-claims provisions. Relator also alleges an "implied false certification" claim, which includes the difficult-to-understand theory that the Medicaid claims submitted by the Affiliate Defendants while their terminations were enjoined were knowingly false at the time they were submitted because the Affiliate Defendants "knew" they had been terminated from Texas and Louisiana Medicaid—which, of course, by federal-court order, they had not been. Finally, Relator alleges that the Affiliate Defendants conspired with each other and PPFA to violate the FCA and state analogues. *Id*.

2. As relevant here, Relator also maintains these claims against PPFA (though the district court granted PPFA summary judgment on the reverse-false-claim

---

[2] Indeed, the Louisiana affiliate remains an approved Louisiana Medicaid provider today.

theory).  But the theories just described do not work against PPFA because PPFA does not provide healthcare services or make Medicaid claims.  So instead, Relator principally alleges that the Affiliate Defendants' lawyers from PPFA's L&L department represented the Affiliate Defendants in obtaining preliminary injunctions and administrative relief, and thereby "caused" the Affiliate Defendants to violate the FCA and its analogues.  *Id.* 4.  In particular, Relator argues that PPFA is liable for "causing" the Affiliate Defendants to violate the statutes because L&L attorneys "mastermind[ed] and orchestrat[ed] a strategy"—namely, to successfully seek federal-court injunctions—"to enable Affiliate Defendants to continue to seek reimbursement from Texas and Louisiana Medicaid after the effective date of their terminations[3] and continue in their refusal to return those funds."  Pet.App. 13; ROA.10324-10325.  In other words, Relator's theory is that when L&L attorneys successfully filed preliminary-injunction briefs in federal district court or appellate briefs in this Court, *those attorneys* violated the FCA and its analogues, and PPFA can be vicariously liable as the attorneys' employer.

3.  The parties cross-moved for summary judgment.  Relator's liability-for-legal-advice-and-litigation theory was the basis for his (and Texas's) reverse-false-

---

[3] Relator argues that the terminations were effective 30 days after the termination notices were issued, even though the injunctions in place at that time (and for years afterward) prohibiting the states from terminating the Affiliate Defendants from Medicaid.

claim count against PPFA, but the district court granted PPFA summary judgment on that claim on statutory grounds. ROA.46677-46678. Relator's remaining implied-false-certification and conspiracy claims (which Texas does not join) are also (in the district court's words) "predicated on alleged litigation strategies, conduct, and legal maneuvering—orchestrated by PPFA's L&L department—to 'cause' the submission of allegedly false claims and to conspire to violate both federal and state law." ROA.48284.

PPFA's opposition was thus based in large part on the attorney-immunity doctrine—i.e., that PPFA cannot be made to stand suit under Texas, Louisiana, or federal law because it employs attorneys who provide independent representation to affiliates, and those attorneys advised the Affiliate Defendants to seek relief in federal court, drafted and filed pleadings, briefs, and communications, argued those cases (including in multiple appeals before this Court), and otherwise "mastermind[ed] and orchestrat[ed]" a legal strategy, ROA.10324, ROA.8564-8573, ROA.9180-9188.

4. The district court rejected that argument, ROA.46682, and PPFA appealed the district court's order under the collateral-order doctrine. *See, e.g.*, *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 345 (5th Cir. 2016); ROA.12000. PPFA also moved the district court to stay proceedings in light of its appeal. ROA.12004. Relator opposed the stay and asked the district court to certify PPFA's appeal as

frivolous.  ROA.12056, ROA.12154.  The district court rejected Relator's request and granted the stay, ROA.48279, holding that its "rejection of any 'litigation privilege' or 'attorney immunity' concerning PPFA's L&L department is an immediately appealable collateral order," ROA.48281.

5.  The panel unanimously reversed.  Because this was a collateral-order appeal based on attorney immunity, "the only issue for appeal [wa]s whether PPFA can assert immunity under the FCA and its state analogues for the actions of its L&L attorneys."  Pet.App. 5 n.3.  The answer was yes.

a.  The panel rejected Relator's argument that it lacked appellate jurisdiction.  Relying on this Court's decision in *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024), and the Supreme Court's decision in *Behrens v. Pelletier*, 516 U.S. 299 (1996), the panel held that it has jurisdiction even when the defendant is not "claiming immunity from every claim asserted against them in the lawsuit."  Pet.App. 7.  The question is simply whether the defendant was asserting an immunity from suit as to any claim.  *Id.*  The panel then concluded that "under federal, Texas, and Louisiana law, attorney immunity is akin to immunity from suit, and this court must permit the collateral order appeal."  *Id.* 8; *see also id.* 8-12.

b.  The panel next held that the attorney-immunity doctrine immunizes PPFA from liability based on Relator's theory that L&L attorneys "mastermind[ed] and orchestrat[ed]" a legal strategy "to enable Affiliate Defendants to continue to seek

reimbursement from Texas and Louisiana Medicaid after the effective date of their terminations and continue in their refusal to return those funds," as well as for related conspiracy claims. Pet.App. 13-14. The panel held that under federal, Texas, and Louisiana law, "L&L attorneys have absolute immunity from Relator's claims." *Id.* 16; *see id.* 14-20. And because federal, Texas, and Louisiana law also recognize that "if the party who actually causes the injury is free from all civil and criminal liability therefor, his employer must also be entitled to a like immunity," *id.* 20 (quoting *New Orleans & N.E.R. Co. v. Jopes*, 142 U.S. 18, 24 (1891)), PPFA cannot be held vicariously liable for L&L attorneys' legal advice and representation. *See id.* 20-21.

c. Finally, the Court held that the attorney-immunity defense applies under the FCA and its state analogues because "[c]ommon law defenses apply unless explicitly excluded by statute," *id.* 21, and neither the federal nor state statutes explicitly exclude attorney immunity, *id.* 21-23.

"Accordingly," the panel held, "PPFA should be granted summary judgment on the remaining claims that turn on the actions of its L&L attorney-employees." *Id.* 23.

## REASONS TO DENY THE PETITION

Relator's contention that en banc review is warranted because the panel opinion will gut the FCA is based on a mischaracterization of that unanimous

opinion. The actual opinion is a straightforward application of existing law to an unprecedented theory of FCA liability, and thus would have no effect beyond this case even if it were precedential. And Relator's backup argument—that factual disputes preclude the Court's appellate jurisdiction—is both wrong and entirely factbound (and thus not worthy of en banc review).

### A. Relator's Contention That The Panel's Opinion "Guts" The FCA And Its State Analogues Is Based On A Mischaracterization Of That Opinion.

Relator's petition identifies no important legal principle that the panel opinion decided incorrectly. The petition does not dispute that federal, Texas, and Louisiana law all include a form of attorney immunity. That is presumably because the age-old immunity the panel's opinion recognizes is vital to the proper functioning of our legal system:

> If private attorneys did not have immunity for their activities within the scope of litigation, they would be subject to suit from a third party every time they represent an unpopular client or advance an unpopular issue. It is not difficult to imagine the chilling effect that would have on private attorneys' willingness to participate in unpopular cases. Moreover, allowing third parties to sue private attorneys has the potential to interfere with the attorney's relationship with their own client. Rather than zealously represent their own client, private attorneys would be incentivized to consider their own legal exposure to claims made by a third party.

Pet.App. 17. As Relator himself explains, this sort of attorney immunity is "designed to allow attorneys to zealously represent their clients without fear of personal liability," Pet. iv, and he never suggests that the panel was wrong to

recognize this immunity. Nor does Relator's petition dispute that if L&L attorneys have such immunity, then so does their employer when sued on a respondeat superior theory, [4] Pet.App. 20-21, or that the attorney-immunity defense is available under the FCA and its state analogues, *id*. 21-23. The petition, in other words, does not disagree with a single portion of the legal rule the panel followed.

Rather, Relator's main argument for en banc review is that the effect of the panel's opinion would "blow[] a hole in" the FCA and its state analogues because according to Relator, the panel held that if "PPFA's in-house attorneys participated

---

[4] Texas's cursory amicus filing does make the argument that non-law-firm employers sued for attorney advocacy on a respondeat superior theory cannot invoke that immunity. *See* Dkt. 133. But Texas cites no case considering and rejecting attorney immunity in these circumstances. The only case it cites that even mentioned the issue is *Landry's, Inc. v. Animal Legal Defense Fund*, 631 S.W.3d 40 (Tex. 2021), where the intermediate appellate court applied attorney immunity to a non-law firm, but the Texas Supreme Court resolved the case on a different ground and thus declined to consider the question, *id.* at 51 n.12. More important, Texas does not even attempt to respond to the Texas Supreme Court precedent on which the panel relied, Pet.App. 20-21, which definitively precludes Texas's argument, *see Knutson v. Morton Foods, Inc.*, 603 S.W.2d 805, 807 n.2 (Tex. 1980) ("It is well established that where the employer's liability rests solely on respondeat superior, an adjudication acquitting the employee of negligence will stand as a bar to a subsequent suit against the employer."); *DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex. 1995) (concluding that a governmental entity "is not liable" under the Texas Tort Claims Act under a respondeat superior theory "for the negligence of its employee when the employee has no liability because of official immunity"). It is also worth noting that while Texas intervened as a party below (and is thus not really an "amicus curiae" here), the only claim it joined against PPFA was the reverse-false-claims claim the district court rejected as a matter of law. PPFA Opening Br., Dkt. 68 at 11. Texas apparently believed that Relator's remaining theories against PPFA are too frivolous to support.

in some unlawful acts alleged here, PPFA, their corporate employer, is immune from liability." Pet. 9. Thus, Relator contends, "corporate defendants will adopt the PPFA playbook and use in-house counsel to supervise subsidiaries' claims process[es] to maximize revenue without fear of liability," which "could cause the government to lose billions in recovered funds." *Id.*

That argument is based on an opinion the panel never wrote. As the panel explained, its "holding is a narrow one. Private attorneys are immune from claims filed by third parties *for their activities as advocates*." Pet.App. 18 (emphasis added). That means that lawyers cannot be held to have violated the FCA for representing their clients in litigation and related activities, including "masterminding and orchestrating" a legal strategy to seek (and defend in this Court) district-court injunctions. *See supra* at 6. It does *not* mean that if a corporation involves an attorney in the filing of a false claim, the corporation is somehow immune. To the contrary, while a corporation cannot be indirectly liable *for legal advice provided by one of its attorneys*, that would not shield the corporation from direct liability *for making a false claim*. The same goes for non-in-house attorneys. If attorney representation of a client causes the client to make a false claim, the client can be directly liable *for making the false claim* even if the attorney cannot be liable for the representation. In both situations, the corporation would not be vicariously liable for its attorneys' advice, but *directly* liable for filing a false claim. That is why

the Affiliate Defendants did not raise an attorney-immunity defense—Relator's claims against the Affiliate Defendants should fail for many reasons, but attorney immunity is not one of them.

Indeed, Relator is not even right that all of his claims against PPFA are implicated by the panel's decision. That much is obvious from the panel's jurisdictional discussion, which was premised on the fact that PPFA was not "claiming immunity from every claim asserted against them in the lawsuit." Pet.App. 7. In particular, to the extent Relator's theory that "PPFA was involved in the Affiliates' businesses to a degree that shows they were aware of the fraudulent activity and did nothing to stop it … is not dependent upon lawyer conduct," Pet. 10, it does not fall under the panel's holding, which is that Relator's claims fail "*to the extent* they turn on the actions or advice of L&L attorneys," Pet.App. 21 (emphasis added); *see also* PPFA Reply Br., Dkt. 83 at 8 ("This Appeal Is Limited To Relator's Attempt To Hold PPFA Liable For Attorney Advice And Representation, Not Any Other Theory Of Liability.").[5]

---

[5] Relator also suggests, without any citation or explanation, that attorney immunity would not apply if L&L attorneys were representing the Affiliate Defendants in furtherance of PPFA's mission, or if non-attorney PPFA employees were involved. Pet. 10-11. That cannot possibly matter. Public-interest law firms routinely engage in mission-driven litigation, and Relator proffers no argument for why such litigation would fall outside the scope of attorney immunity. Indeed, as PPFA's opening brief explained, a holding that attorney immunity does not apply in these circumstances would expose numerous organizations that engage in mission-driven litigation—including the AARP, Home School Legal Defense Association,

And there is no chance the panel's non-precedential opinion will have any impact beyond this case because, as far as PPFA is aware, no other litigant in the FCA's more-than-160-year history has attempted to press a causal liability theory based on attorney advice and litigation conduct. One reason for that is the centuries-old pedigree of the attorney-immunity doctrine. *See, e.g.*, *Hodgson v. Scarlett*, 171 Eng. Rep. 362, 363 (C.P. 1817) ("counsel should be protected in the execution of their duty in [c]ourt"); *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983) ("the common law provided absolute immunity from subsequent damages liability for all persons—governmental *or otherwise*—who were integral parts of the judicial process" (emphasis added)); *Butz v. Economou*, 438 U.S. 478, 512 (1978) ("Absolute immunity is … necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.").

Another reason may be that Relator's theory would be precluded even apart from attorney immunity—for example, by the *Noerr-Pennington* doctrine and related principles. *See, e.g.*, *Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 743 (1983) (labor laws cannot be construed to prevent the "filing and prosecution of a well-founded lawsuit"). Whatever the reason, FCA theories like Relator's simply have never been pressed, and the only way they could proliferate in the future is if

---

Liberty Counsel, and Catholic Charities of Central Texas—to legal liability for their litigation and advocacy. PPFA Opening Br., Dkt. 68 at 40-41.

the panel decision had come out the other way. The panel's opinion is simply a one-off affirmation of a basic principle that everyone already knew, and that Relator's petition does not even dispute.

> **B.** **Relator's Contention That The Panel Improperly Reviewed An Interlocutory District-Court Ruling Involving Factual Disputes That Preclude Summary Judgment Is Incorrect, And Would Not Support En Banc Review Even If It Were Right.**

Relator's second argument is that the panel opinion's jurisdictional holding violated the rule that "in an interlocutory appeal [courts] lack the power to review the district court's decision that a genuine factual dispute exists," and thus "consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment." *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc); *see* Pet. 11-12.

That argument fails because the district court did not hold that fact disputes precluded a ruling on attorney immunity. Rather, the district court rejected PPFA's argument on two purely legal grounds: (1) because Relator does "not purport to attach personal liability to the individual L&L lawyers' representation of Affiliate Defendants," and (2) because "nothing in Section 3729(a)(1) purports to preclude liability if the person who 'causes' the submission of false claims just so happens to be a lawyer." ROA.46682. The panel identified and answered both of these legal grounds. Pet.App. 20 (explaining the "district court determined that attorney

immunity did not apply to PPFA because Relator sued PPFA on a respondeat superior theory rather than the L&L attorneys directly"); *id.* 20-21 (rejecting that holding); *id.* 21 ("The district court also found that attorney immunity does not apply because the FCA, TMFPA, and the LMAPIL, override attorney immunity. This was error."). Indeed, Relator's argument that the panel's exercise of jurisdiction invaded the district court's authority is especially odd given that the district court itself held that PPFA's collateral-order appeal was proper. *See* ROA.48281, ROA.48283-48284. The panel's opinion thus fully complies with the en banc Court's directive in *Kinney*.

In any event, Relator's entirely factbound argument that the panel incorrectly resolved factual disputes comes nowhere close to satisfying the en banc standard. If the panel had committed such an error, it would by definition be one that has no implication beyond this case. Whether an appellate court silently but improperly resolved factual disputes in a particular appeal is not "an error of exceptional public importance," Circuit IOP at 36, and thus does not warrant en banc review.

## CONCLUSION

For the foregoing reasons, the petition should be denied.

Respectfully submitted,

/s/ *Anton Metlitsky*

Anton Metlitsky
O'MELVENY & MYERS LLP
1301 Avenue of the Americas
New York, NY 10019
Tel: (212) 326-2291
ametlitsky@omm.com

Danny S. Ashby
O'MELVENY & MYERS LLP
2801 N. Harwood Street
Dallas, TX 75201
Tel: (972) 360-1904
dashby@omm.com

Leah Godesky
L. Nicole Allan
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Tel: (310) 246-8501
lgodesky@omm.com
nallan@omm.com

*Counsel for Planned Parenthood Federation of America, Inc., Defendant-Appellant*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2025, an electronic copy of the foregoing document was filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit and served on counsel for Plaintiff-Appellee using the appellate CM/ECF system.

/s/ *Anton Metlitsky*
Anton Metlitsky

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit and the word limit of Fed. R. App. P. 35(b)(2)(A) and Fed. R. App. P. 40(b)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,891 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(7)(B)(i) and Fed. R. App. P. 32(a)(5), and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally-spaced typeface using Microsoft Word in size 14 font in Times New Roman.

*/s/ Anton Metlitsky*
Anton Metlitsky
Counsel for Defendant-
Appellant Planned Parenthood
Federation of America, Inc.

Dated:  March 28, 2025