No. 23-11184

# In the
# United States Court of Appeals
# for the Fifth Circuit

---

UNITED STATES OF AMERICA, EX REL., ALEX DOE, RELATOR,
*Plaintiff-Appellee,*
v.

PLANNED PARENTHOOD FEDERATION OF AMERICA, INCORPORATED,
*Defendant-Appellant,*

---

On Appeal from the United States District Court
for the Northern District of Texas, Amarillo
No. 2:21-CV-22, Hon. Matthew J. Kacsmaryk, Judge Presiding

---

## LAW PROFESSORS AND ETHICS PROFESSIONALS'
## MOTION FOR LEAVE TO FILE BRIEF
## OF AMICUS CURIAE IN SUPPORT OF DEFENDANT-APPELLANT AND REVERSAL

Jennifer Rappoport
Katherine P. Chiarello
Christine Roseveare
*Counsel of Record*
BOTKIN CHIARELLO CALAF PLLC
1209 Nueces Street
Austin, Texas 78701
[Tel.] (512) 615-2341
jennifer@bccaustin.com

ATTORNEYS FOR AMICI CURIAE

## CERTIFICATE OF INTERESTED PARTIES

Pursuant to Federal Rule of Appellate Procedure 26.1(a) and Fifth Circuit Rule 29.2, the undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the amicus brief. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Person or Entity | Connection to case |
|---|---|
| S. Alan Childress | Amicus curiae |
| Renee Knake Jefferson | Amicus curiae |
| David Luban | Amicus curiae |
| Milan Markovic | Amicus curiae |
| Ellen A. Panksy | Amicus curiae |
| Jennifer Rappoport | Counsel to amici |
| Katherine P. Chiarello | Counsel to amici |
| Christine Roseveare | Counsel to amici |

*/s/ Jennifer Rappoport*
Jennifer Rappoport

## INTRODUCTION

Amici curiae, ("Amici"), through their undersigned counsel, respectfully submit this motion for leave to file a Brief of Amicus Curiae in support of Defendant-Appellant Planned Parenthood Federation of America, Inc. ("PPFA") and Reversal. *See* FED. R. APP. P. 29.[1]

## IDENTITY AND INTEREST OF AMICI CURIAE

Amici are law professors and ethics professionals with expertise in legal ethics and professional responsibility. Amici include professors of ethics at law schools throughout the United States. They research, write, and teach in the field of legal ethics at public and private universities. Amici submit this brief in support of two long-established principles: (1) each attorney has an undivided duty of loyalty to his or her client and (2) attorneys receive robust immunity to safeguard that loyalty.

S. Alan Childress is the Conrad Meyer III Professor of Civil Procedure at Tulane University Law School, specializing in the legal profession and professional responsibility, as well as appellate courts. He joined the Tulane faculty in 1988 and holds a Ph.D. in Jurisprudence & Social Policy from the University of California at Berkeley. (Professor Childress joins in his individual capacity only. His participation

---

[1] Pursuant to Fed. R. App. P. 29(a)(4), Amici certify that counsel for Amici authored this brief in whole; that no counsel for a party authored this brief in any respect; and that no person or entity, other than Amici and their counsel, contributed monetarily to this brief's preparation or submission.

is not authorized by, and must not be construed as reflecting on, the position of Tulane University. No Tulane University resources were used in the preparation of this motion or amicus brief.)

Renee Knake Jefferson is the Doherty Chair in Legal Ethics and Professor of Law at the University of Houston Law Center. She is an expert in legal and judicial ethics whose publications include *Law Democratized: A Blueprint for Solving the Justice Crisis* (NYU Press 2024). She currently sits on the board of directors for the International Association of Legal Ethics. (Professor Jefferson joins in her individual capacity only. Her participation is not authorized by, and must not be construed as reflecting on, the position of the University of Houston. No University of Houston resources were used in the preparation of this motion or amicus brief.)

David Luban is Distinguished University Professor at Georgetown Law. He teaches and writes about legal ethics. He also served for twelve years as the Class of 1965 Distinguished Chair in Ethics at the U.S. Naval Academy's Stockdale Center for Ethical Leadership.

Milan Markovic is a Presidential Impact Fellow, Professor of Law, and Co-Convener of the Program in Law and Social Science at the Texas A&M University School of Law. He is an expert in the legal ethics field, recently publishing on the topics of legal market decartelization and artificial intelligence's impact on the legal profession. (Professor Markovic joins in his individual capacity only. His

participation is not authorized by, and must not be construed as reflecting on, the position of Texas A&M University. No Texas A&M University resources were used in the preparation of this motion or amicus brief.)

Ellen A. Pansky is the founder of Pansky Markle Attorneys at Law, a law practice dedicated to legal ethics and the representation and advising of lawyers. She is a member and past president of the Association of Professional Responsibility Lawyers ("APRL"). In 2016, APRL presented Ms. Pansky with its Charles W. Kettlewell Legal Ethics Advisor Award, which acknowledges the lifetime achievement of a lawyer who has demonstrated excellence in and dedication to the field of legal ethics and professional responsibility.

## AUTHORITY TO FILE BRIEF AMICI CURIAE

1.     Federal Rules of Appellate Procedure 29(a)(2)–(3) provide that amici curiae may file a brief with the Court's permission, and that attendant motions requesting the Court's leave to file such briefs must state the "movant's interest," "reason why an amicus brief is desirable[,] and why the matters asserted are relevant to the disposition of the case."

2.     "Courts enjoy broad discretion to grant or deny leave to amici under Rule 29." *Lefebure v. D'Aquilla*, 15 F.4th 670, 673 (5th Cir. 2021). "As then-Judge Alito once noted, 'a restrictive policy with respect to granting leave to file may create at least the perception of viewpoint discrimination.'" *Id.* at 674 (quoting

*Neonatology Associates, P.A. v. Comm'r of Internal Revenue*, 293 F.3d 128, 133 (3rd Cir. 2002).

3.     This case considers whether attorney immunity applies to PPFA, and whether, because of that attorney immunity, PPFA cannot be held liable to third parties based on the litigation position(s) taken by its employee-attorneys in their representation of certain Planned Parenthood affiliates. As ethics professors and legal professionals, Amici have a strong interest in the outcome of this case and its impact on attorney ethical obligations.

4.     Amici's proposed brief is relevant to the proper resolution of this case. The brief addresses the ethical rules and obligations that apply to attorneys – regardless of the organization in which they practice – and the ethical reasons that attorney immunity should apply to organizations that employ attorneys who represent their members or affiliates. Amici believe that the panel correctly concluded that attorney immunity applies to PPFA such that it cannot be held liable to third parties as a result of the litigation position taken by its employee-attorneys in their representation of certain Planned Parenthood affiliates.

5.     For the foregoing reasons, Amici respectfully request that the Court grant their motion for leave to file the Brief of Law Professors and Ethics Professionals in Support of Defendant-Appellant and Reversal, attached hereto as Exhibit A.

Respectfully submitted,

*/s/ Jennifer Rappoport*
Jennifer Rappoport
Texas State Bar No. 24072761
jennifer@bccaustin.com
Katherine P. Chiarello
Texas State Bar No. 24006994
katherine@bccaustin.com
Christine Roseveare
Texas State Bar No. 24008808
christine@bccaustin.com

BOTKIN CHIARELLO CALAF PLLC
1209 Nueces Street
Austin, Texas 78701
T: (512) 615-2341
F: (737) 289-4695

**ATTORNEYS FOR AMICI CURIAE**

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this brief complies with the typeface and volume limits of FED. R. APP. P. 32(a) and Local Rule 32.1. This document complies with the word limit of FED. R. APP. P. 27(d)(2)(A) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f), this document contains 921 words. This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 14-point Times New Roman font for text and footnotes.

*/s/ Jennifer Rappoport*
Jennifer Rappoport

## CERTIFICATE OF CONFERENCE

I certify that counsel for Amici conferred or attempted to with counsel for Plaintiff-Appellee and Defendant-Appellant to determine whether they oppose the relief sought by this Motion for Leave. Counsel for Defendant-Appellant confirmed that they do not oppose the relief sought by this Motion. As of the time of this filing, counsel for Plaintiff-Appellee had not informed us whether Plaintiff-Appellee opposes the relief sought by this Motion in response to our August 4 attempt to confer by email.

*/s/ Jennifer Rappoport*
Jennifer Rappoport

## CERTIFICATE OF SERVICE

I certify that on August 4, 2025, the foregoing was electronically filed using the Court's electronic filing system, by which notice of this filing will be sent to all counsel of record.

*/s/ Jennifer Rappoport*
Jennifer Rappoport

# Exhibit A

No. 23-11184

# In the
# United States Court of Appeals
# for the Fifth Circuit

UNITED STATES OF AMERICA, EX REL., ALEX DOE, RELATOR,
*Plaintiff-Appellee,*
v.

PLANNED PARENTHOOD FEDERATION OF AMERICA, INCORPORATED,
*Defendant-Appellant,*

On Appeal from the United States District Court
for the Northern District of Texas, Amarillo
No. 2:21-CV-22, Hon. Matthew J. Kacsmaryk, Judge Presiding

**BRIEF OF LAW PROFESSORS AND ETHICS PROFESSIONALS, AS *AMICI CURIAE*
IN SUPPORT OF DEFENDANT-APPELLANT AND REVERSAL**

Jennifer Rappoport
Katherine P. Chiarello
Christine Roseveare
*Counsel of Record*
BOTKIN CHIARELLO CALAF PLLC
1209 Nueces Street
Austin, Texas 78701
[Tel.] (512) 615-2341

ATTORNEYS FOR AMICI CURIAE

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................... i

TABLE OF AUTHORITIES ...................................................... ii

INTRODUCTION AND INTEREST OF *AMICI CURIAE* ...................................1

ARGUMENT ....................................................................4

   I.   The Lawyer's Undivided Duty Is To the Client. ...........................5

   II.  Attorney Immunity Protects the Attorney's Independence from Outside Interests that are Contrary to the Attorney's Duty of Loyalty to the Client. ...6

     A.   Attorney Immunity to Suit is Well-Established. .........................6

     B.   The Employment Structure Varies; Attorney Immunity Does Not. ...........10

     C.   Attorney Immunity Must Apply to the Employer to Avoid Erosion of the Lawyer's Judgment By Third-Party Threats. ...........................12

   III.  Affirming the Panel's Decision is Consistent with Other Ethical Considerations. .......................................................13

CONCLUSION .................................................................14

CERTIFICATE OF SERVICE .....................................................16

CERTIFICATE OF COMPLIANCE ..................................................17

# TABLE OF AUTHORITIES

## Cases

*Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015) ........................7

*Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429 (2000) ........9

*Congress Square Ltd. P'ship v. Polk*, 2011 WL 837144 (E.D. La. Mar. 4, 2011) .....7

*Haynes & Boone LLP v. NFTD, LLC*, 631 S.W.3d 65 (Tex. 2021) .......................7, 8

*Joyner v. DeFriend*, 255 S.W.3d 281, 283 (2008) .....................................9

*Legal Services Corp. v. Velazquez*, 531 U.S. 533 (2001)...........................6

*Montalvo v. Sondes*, 637 So.2d 127 (La. 1994) .....................................7

*Taylor v. Tolbert*, 644 S.W.3d 637 (Tex. 2022) ....................................7

*Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341 (5th Cir. 2016) ...................7

## Other Authorities

Certiorari, Rush v. United States of America, No. 24-1259 (U.S. June 6, 2025)...12

## Rules

American Bar Association's Model Rules of Prof'l Conduct Rule 1.0(c) ...............10

American Bar Association's Model Rules of Prof'l Conduct Rule 1.0, Comment ¶3 ...................................................................................11

American Bar Association's Model Rules of Prof'l Conduct Rule 1.7, Comment ¶1 ....................................................................................6

American Bar Association's Model Rules of Prof'l Conduct Rule 1.7(a)(2) ......8, 12

American Bar Association's Model Rules of Prof'l Conduct Rule 1.7(b)(1) ...........8

American Bar Association's Model Rules of Prof'l Conduct Rule 2.1.....................6

American Bar Association's Model Rules of Prof'l Conduct Rule 1.2(d)................9

American Bar Association's Model Rules of Prof'l Conduct Rule 8.4(a) ................9

American Bar Association's Model Rules of Prof'l Conduct Rule 8.4(c) ................9

American Bar Association's Model Rules of Prof'l Conduct Preamble ¶20 ............9

La. Rules of Prof'l Conduct Rule 1.0(c)...................................................10

La. Rules of Prof'l Conduct Rule 1.7(a)(2) ...........................................12

La. Rules of Prof'l Conduct Rule 1.7(b)(1)...............................................8

La. Rules of Prof'l Conduct Rule 1.7(a)(2) ................................................8

La. Rules of Prof'l Conduct Rule 1.8(f)(2) ...............................................6

La. Rules of Prof'l Conduct Rule 5.4(c)...................................................6

Texas Disciplinary Rules of Prof'l Conduct Rule 1.06(b)(2) .............................8, 12

Texas Disciplinary Rules of Prof'l Conduct Rule 1.06(c)(1) ..................................8

Texas Disciplinary Rules of Prof'l Conduct Rule 6.01, Comment ¶4 ..................13

Texas Disciplinary Rules of Prof'l Conduct Rule 6.01, Comment ¶5 ...................13

Texas Disciplinary Rules of Prof'l Conduct 1.08(e)(2)...........................................6

Texas Disciplinary Rules of Prof'l Conduct 5.04(c) ...............................................6

Texas Disciplinary Rules of Prof'l Conduct Preamble ¶15......................................9

Texas Disciplinary Rules of Prof'l Conduct, Terminology .....................................10

## Treatises

ABA Comm. on Ethics and Professional Responsibility Formal Ethics Opinion 03-430 (Propriety of Insurance Staff Counsel Representing the Insurance Company and Insureds; Permissible Names for Association of Insurance Staff Counsel) (2003), FN2 ........................................................................................11

ABA Comm. on Ethics and Professional Responsibility Formal Ethics Opinion 03-430 (Propriety of Insurance Staff Counsel Representing the Insurance Company and Insureds; Permissible Names for Association of Insurance Staff Counsel) (2003). Page 9.....................................................................................12

Restatement (Third) of the Law of Lawyering (2000), § 7, Comment *b* .................5

Restatement (Third) of the Law of Lawyering (2000), § 16, Comment *b* ...............6

## INTRODUCTION AND INTEREST OF *AMICI CURIAE*[1]

This appeal concerns whether an organization, in this case, Planned Parenthood Federation of America, Inc. ("PPFA") may be held liable to third parties for the acts of attorneys it employs.  We believe that lawyer immunity should protect employers from liability to third parties for the acts of lawyers they employ to promote and protect attorney loyalty and independence.

Amici Curiae ("Amici") are law professors and legal professionals with expertise in legal ethics and professional responsibility.  Amici include professors of ethics at law schools throughout the United States. They research, write, and teach in the field of legal ethics at public and private universities.  Amici submit this brief in support of two long-established principles: (1) each attorney has an undivided duty of loyalty to his or her client and (2) attorneys receive robust immunity to safeguard that loyalty.  Many organizations—on both sides of the political spectrum representing a wide variety of interests—employ attorneys to represent third-party clients, and otherwise applicable attorney immunity should apply to such employers.

Amici believe that the panel's decision correctly concluded that attorney immunity applies to PPFA, and thus PPFA cannot be held liable to third parties as a

---

[1] No party or counsel for a party— nor any person other than Amici and their counsel—authored this brief in whole or in part or contributed any money intended to fund its preparation or submission.

result of the litigation position taken by its employee-attorneys in their representation of certain Planned Parenthood affiliates. To that extent, we support PPFA's request to this en banc panel to reverse the district court's order denying PPFA's motion for summary judgment.

S. Alan Childress is the Conrad Meyer III Professor of Civil Procedure at Tulane University Law School, specializing in the legal profession and professional responsibility, as well as appellate courts. He joined the Tulane faculty in 1988 and holds a Ph.D. in Jurisprudence & Social Policy from the University of California at Berkeley. (Professor Childress joins in his individual capacity only. His participation is not authorized by, and must not be construed as reflecting on, the position of Tulane University. No Tulane University resources were used in the preparation of this amicus brief.)

Renee Knake Jefferson is the Doherty Chair in Legal Ethics and Professor of Law at the University of Houston Law Center. She is an expert in legal and judicial ethics whose publications include *Law Democratized: A Blueprint for Solving the Justice Crisis* (NYU Press 2024). She currently sits on the board of directors for the International Association of Legal Ethics. (Professor Jefferson joins in her individual capacity only. Her participation is not authorized by, and must not be construed as reflecting on, the position of the University of Houston. No University of Houston resources were used in the preparation of this amicus brief.)

David Luban is Distinguished University Professor at Georgetown Law. He teaches and writes about legal ethics. He also served for twelve years as the Class of 1965 Distinguished Chair in Ethics at the U.S. Naval Academy's Stockdale Center for Ethical Leadership.

Milan Markovic is a Presidential Impact Fellow, Professor of Law, and Co-Convener of the Program in Law and Social Science at the Texas A&M University School of Law. He is an expert in the legal ethics field, recently publishing on the topics of legal market decartelization and artificial intelligence's impact on the legal profession. (Professor Markovic joins in his individual capacity only. His participation is not authorized by, and must not be construed as reflecting on, the position of Texas A&M University. No Texas A&M University resources were used in the preparation of this amicus brief.)

Ellen A. Pansky is the founder of Pansky Markle Attorneys at Law, a law practice dedicated to legal ethics and the representation and advising of lawyers. She is a member and past president of the Association of Professional Responsibility Lawyers ("APRL"). In 2016, APRL presented Ms. Pansky with its Charles W. Kettlewell Legal Ethics Advisor Award, which acknowledges the lifetime achievement of a lawyer who has demonstrated excellence in and dedication to the field of legal ethics and professional responsibility.

**ARGUMENT**

In this appeal, Relator seeks to hold PPFA liable for the strategies and outcomes in a prior lawsuit to which PPFA was not a party, but in which lawyers employed by PPFA represented the defendants. As we understand the facts and proceedings that led to this appeal, PPFA operates what is essentially a stand-alone law firm referred to as the "Litigation & Law" Department ("L&L"), which serves as an affiliate's outside counsel, including sometimes as litigation counsel, when engaged by a Planned Parenthood affiliate. We further understand that PPFA is a distinct entity from the Planned Parenthood affiliates – PPFA is a separate legal entity with its own board of directors and organizational documents. Similarly, each Planned Parenthood affiliate is a separate, independently incorporated entity with its own board of directors and governing documents. While Planned Parenthood affiliates are members of PPFA, and can engage L&L as counsel, they are not required to do so, and in fact, they often engage private law firms as counsel in litigation rather than, or in addition to, L&L. We further understand that when a Planned Parenthood affiliate engages L&L, an attorney client relationship is formed between L&L and the Planned Parenthood affiliate. L&L strictly maintains the confidentiality of information obtained from the client affiliate, and does not share privileged information with other PPFA departments or PPFA staff outside of L&L. From an ethical perspective, this is an unexceptional arrangement that is common in

a number of business contexts, including when attorneys employed by an insurance company represents that company's insured individuals and entities.

Amici urge this en banc panel to hold, as did the panel, that PPFA is entitled to attorney immunity from claims arising from L&L's representation of Planned Parenthood affiliates. A contrary result would make it difficult, if not impossible, for individual attorneys who provide services to clients that are paid by another entity to uphold their fiduciary duty of loyalty to their clients. The propriety of attorney conduct is already regulated by both state licensing boards and the courts themselves. Removing or limiting traditional attorney immunity from employers would open the door to vexatious litigation by third parties who dislike the attorney's employer or client. Lawyers would avoid accepting high-profile and potentially controversial representations out of a fear that these representations could blow back on their employers. Depriving parties – including unpopular ones – of their choice of counsel erodes the zealous advocacy that is central to our adversarial justice system.

## I.    The Lawyer's Undivided Duty Is To the Client.

It is long-established that a lawyer is the agent and fiduciary of his or her client. "The relationship between lawyer and client is one in which the lawyer generally owes the client rigorously enforced fiduciary duties …." Restatement (Third) of the Law Governing Lawyers (2000), § 7, Comment *b*; *accord* § 16,

Comment *b*. The fiduciary duty of undivided loyalty is perhaps the most significant ethical obligation owed by an attorney to his or her client.

Both "[l]oyalty and independent judgment are essential elements in the lawyer's relationship to the client." American Bar Association's Model Rules of Professional Conduct ("ABA Model Rules") Rule 1.7, Comment ¶1. "In representing a client, a lawyer shall exercise independent professional judgment and render candid advice." ABA Model Rule 2.1. This obligation holds even if some entity other than the client pays for the representation. Texas Disciplinary Rules of Prof'l Conduct ("Texas Rules") 1.08(e)(2), 5.04(c) and La. Rules of Prof'l Conduct ("Louisiana Rules") Rules 1.8(f)(2), 5.4(c). *See, cf., Legal Services Corp. v. Velazquez*, 531 U.S. 533, 545 (2001) (because "[a]n informed, independent judiciary presumes an informed, independent bar" a governmental restriction on such independence "is inconsistent with the proposition that attorneys should present all the reasonable and well-grounded arguments necessary for proper resolution of [a] case.")

## II. Attorney Immunity Protects the Attorney's Independence from Outside Interests that are Contrary to the Attorney's Duty of Loyalty to the Client.

### A. Attorney Immunity to Suit is Well-Established.

Attorneys and law firms in Texas and elsewhere are generally immune from third-party liability for legal services provided in the representation of a client. *See,*

*e.g.*, *Haynes & Boone LLP v. NFTD, LLC*, 631 S.W.3d 65, at 76, 81 (Tex. 2021). Under Texas law, "attorney immunity is properly characterized as a true immunity from suit, not as a defense to liability." *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 346 (5th Cir. 2016). Similarly, under Louisiana law, an attorney does not owe a legal duty to third-parties, absent evidence of specific malice or that the attorney had a desire to harm a third party independent of the duty to protect his or her client. *See Montalvo v. Sondes*, 637 So.2d 127, 130 (La. 1994); *Congress Square Ltd. P'ship v. Polk*, 2011 WL 837144, at *11 (E.D. La. Mar. 4, 2011).

Lawyer immunity exists so that lawyers may provide zealous representation without fear of personal liability to third parties. *See Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (the "attorney-immunity defense is intended to ensure 'loyal, faithful, and aggressive representation by attorneys employed as advocates.'") (citations omitted.) Such immunity prevents an attorney from being "forced constantly to balance his own potential exposure against his client's best interest." *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341 at 346; *Taylor v. Tolbert*, 644 S.W.3d 637, 647 (Tex. 2022) (attorney immunity ensures lawyers are able to purse legal rights for their clients without the "menace of civil liability looming over them;") (citation omitted).

Without that immunity, lawyers could perpetually teeter on the brink of disqualification under applicable conflict of interest rules. These rules prohibit

lawyers from representing clients if the representation may be adversely affected by the lawyer's personal interest – in this case, the lawyer's personal interest in not being sued. *See, e.g.*, ABA Model Rule 1.7(a)(2); Texas Rule 1.06(b)(2); Louisiana Rule 1.7(a)(2). These rules do permit clients to consent to conflicted representation, but only if "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation." ABA Model Rule 1.7(b)(1); Louisiana Rule 1.7(b)(1). Similarly, the corresponding Texas Rule allows such representations only if the lawyer reasonably believes the representation "will not be materially affected." Texas Rule 1.06(c)(1).

It seems clear that a lawyer could reasonably question whether exposure to lawsuits by disaffected third parties will materially affect their representation. Lawyers understand that even if the lawsuits are meritless nuisance suits, they will still have to defend them. That is why attorney immunity is so vital. The possibility of being sued creates a potentially disqualifying personal interest across the entire range of contentious cases. Attorney immunity is a vital protection of lawyers' ability to represent clients with undivided loyalties. *Haynes and Boone*, at 67 ("attorney immunity applies in all adversarial contexts in which an attorney has a duty to zealously and loyally represent a client.")

This is not to deny that lawyers are subject to professional discipline if they knowingly counsel or assist clients in criminal or fraudulent conduct: they most

certainly are. ABA Model Rules 1.2(d), 8.4(a), and 8.4(c). But the rules of professional conduct are not standards of civil liability and should not be misused as such, as the Texas Rules and ABA Model Rules recognize:

> These rules do not undertake to define standards of civil liability of lawyers for professional conduct. Violation of a rule does not give rise to a private cause of action nor does it create any presumption that a legal duty to a client has been breached.

> Texas Rules Preamble ¶15.

> Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached.

> ABA Model Rules Preamble ¶20.

Because the rules of professional conduct do not purport to be standards of civil liability, breaching a rule does not and should not affect the traditional lawyer immunity. *See Joyner v. DeFriend*, 255 S.W.3d 281, 283 (2008) (holding state bar rules are not enforceable through civil claims); *see also, Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 441 (2000) (holding attorney immunity protected a law firm defendant from civil liability: "[b]ecause other sanctions are available, an attorney's conduct is not actionable even if it is frivolous or without merit, as long as the attorney's alleged conduct was part of discharging his duties in representing his client."). To find otherwise would open the floodgates to satellite litigation against lawyers based on allegations of their clients' misconduct. The

disciplinary system and the possibility of judicial sanctions provide a sufficient deterrent to lawyers assisting client wrongdoing.

### B.     The Employment Structure Varies; Attorney Immunity Does Not.

Lawyer immunity should not and does not depend on the business structure of a lawyer's practice.  The ABA Model Rules, Texas Rules, and Louisiana Rules each recognize that law firms may take different forms, including, *inter alia*, traditional law firms, legal aid or legal services organizations, law firms comprised of staff attorneys employed by insurance companies to represent the insured parties, and law firms comprised of lawyers who represent member-affiliates of their employer organization, as in this case.  *See* ABA Model Rule 1.0(c) ("'Firm' or 'law firm' denotes a lawyer or lawyers in a law partnership, professional corporation, sole proprietorship or other association authorized to practice law; or lawyers employed in a legal services organization or the legal department of a corporation or other organization."); *see also*, Texas Rules, Terminology ("'Firm' or 'Law firm' denotes a lawyer or lawyers in a private firm; or a lawyer or lawyers employed in the legal department of a corporation, legal services organization, or other organization, or in a unit of government."); Louisiana Rule 1.0(c) ("'Firm' or 'law firm' denotes a lawyer or lawyers in a law partnership, professional corporation, sole proprietorship or other association authorized to practice law; or lawyers employed in a legal services organization or the legal department of a corporation or other

10

organization.")   As the ABA Model Rules explain, "With respect to the law department of an organization, … there is ordinarily no question that the members of the department constitute a firm within the meaning of the Rules of Professional Conduct." ABA Model Rule 1.0, Comment ¶3.

The fact that the law department of an organization represents clients other than the organization itself makes no difference with respect to its professional responsibilities and rights, including its attorneys' immunity. An instructive analogy is the representation of insured persons by lawyers employed by the insurer (so-called "insurance staff counsel" or "captive counsel")[2].   The attorneys owe an undivided duty of loyalty to the insured even though a separate entity (the insurance company) is paying for the representation.   In 2003, the American Bar Association Standing Committee on Ethics and Professional Responsibility considered the propriety of such representations under the Model Rules and found no impropriety unless an actual conflict of interest arises. This is true even for "insurance defense lawyers who must address the potentially divergent interests of insureds and their insurance companies on a daily basis."   ABA Comm. on Ethics and Professional

---

[2] "'Insurance staff counsel' are insurance company employees. Alternatively, they are called 'house,' 'in-house,' 'salaried, or, less precisely, 'captive' counsel." ABA Comm. on Ethics and Professional Responsibility Formal Ethics Opinion 03-430 (Propriety of Insurance Staff Counsel Representing the Insurance Company and Insureds; Permissible Names for Association of Insurance Staff Counsel) (2003), FN2.

Responsibility Formal Ethics Opinion 03-430 (Propriety of Insurance Staff Counsel Representing the Insurance Company and Insureds; Permissible Names for Association of Insurance Staff Counsel) (2003), p. 9.

Regardless of the firm structure, the result is the same: the lawyer must retain independent judgment and loyalty to the client without fear of personal liability. Indeed, PPFA, a party to this action, is hardly the only organization that employs lawyers to represent itself and its constituent members. Other examples include the AARP Foundation, https://www.aarp.org/aarp-foundation/our-work/legal-advocacy/ (last visited Aug. 1, 2025), the Texas Public Policy Foundation, https://www.texaspolicy.com/initiatives/center-for-the-american-future/ (last visited Aug. 1, 2025), Liberty Counsel, https://lc.org/ (last visited Aug. 1, 2025), Catholic Charities of Central Texas, https://ccctx.org/ (last visited Aug. 1, 2025), and Genesis Women's Shelter & Support, https://www.genesisshelter.org/legal (last visited Aug. 1, 2025).

### C. Attorney Immunity Must Apply to the Employer to Avoid Erosion of the Lawyer's Judgment By Third-Party Threats.

ABA Model Rule 1.7(a)(2), Texas Rule 1.06(b)(2), and Louisiana Rule 1.7(a)(2) (requiring loyalty to the client undiluted by personal interests of the lawyer) can only function if the attorney's immunity extends to the person who employs or pays the lawyer. Otherwise, the lawyer may have a divided interest between serving the client and exposing the employer/payor to liability.

We are concerned that a responsible attorney (as attorneys almost uniformly are) would take steps to avoid even a potential to create liability for his or her employer by engaging in representations that could expose the employer. A lawyer may feel even more constrained in litigation if his or her employer is at risk than if it were just the attorney him or herself. It is not hard to predict that such a constraint likely would lead lawyers to decline to take on controversial clients or cases. This deprives not only parties of their preferred choice of counsel, but undermines the zealous advocacy on which our adversarial legal system relies.

## III.  Affirming the Panel's Decision is Consistent with Other Ethical Considerations.

We are also aware of the need for more lawyers to provide legal services, and to take up causes or clients that may be unpopular. *See* Texas Rule 6.01, Comment ¶5. ("History is replete with instances of distinguished and sacrificial services by lawyers who have represented unpopular clients and causes."). "Legal representation should not be denied to people who are unable to afford legal services, or whose cause is controversial or the subject of popular disapproval."  Texas Rule 6.01, Comment ¶4.

Like most courts, the Northern, Western, Southern and Eastern Districts of Texas provide links to resources, including Legal Aid organizations, recognizing the need for such services. *See* https://www.txed.uscourts.gov/?q=legal-services  United States   District   Court,   Northern   District   of   Texas,   Legal   Services,

https://www.txnd.uscourts.gov/legal-services  (last visited July 30, 2025); United States District Court, Western District of Texas, Helpful Links, https://www.txwd.uscourts.gov/court-information/helpful-links/  (last visited July 30, 2025); United States District Court, Southern District of Texas, District Pro Se Filers, https://www.txs.uscourts.gov/page/district-pro-se-filers  (last visited July 30, 2025);  United States District Court, Eastern District of Texas, Legal Services, https://www.txed.uscourts.gov/?q=legal-services (last visited July 30, 2025).  These organizations are often not-for-profit. They would be unable to provide services if perpetually faced with potential third-party liability each time they represented a client and would have to reject clients and causes that are unpopular, controversial, or the subject of popular disapproval.

Allowing the district court's decision to stand would reduce the availability of representation to those who need it most.

## CONCLUSION

We urge this Court to reverse the decision of the district court to the extent it denied summary judgment on claims turning on the actions of PPFA's L&L attorney-employees.

Respectfully submitted,

*/s/ Jennifer Rappoport*
Jennifer Rappoport
Texas State Bar No. 24072761
jennifer@bccaustin.com
Katherine P. Chiarello
Texas State Bar No. 24006994
katherine@bccaustin.com
Christine Roseveare
Texas State Bar No. 24008808
christy@bccaustin.com

BOTKIN CHIARELLO CALAF PLLC
1209 Nueces Street
Austin, Texas 78701
T: (512) 615-2341
F: (737) 289-4695

**ATTORNEYS FOR AMICI CURIAE**

## CERTIFICATE OF SERVICE

I certify that the foregoing Brief of Law Professors and Ethics Professionals, as Amici Curiae in Support of Defendant-Appellant and Reversal was filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit and served on counsel of record using the appellate CM/ECF system.

*/s/ Jennifer Rappoport*
Jennifer Rappoport

## CERTIFICATE OF COMPLIANCE

As required by Federal Rule of Appellate Procedure 32(a)(7)(C), and pursuant to 5th Cir. Rule 25.2, I certify that:

1.  This brief complies with the type-volume limitations of Rule 32(a)(7)(B) because this brief contains 2,488 words, excluding the portions of the brief exempted by Rule 32(f) and Fifth Circuit Rule 32.1.

2.  This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) and Fifth Circuit Rule 32.1 because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 14-point Times New Roman font.

3.  The electronic version of this brief is an exact copy of the paper version, includes the required privacy redactions under 5th Cir. Rule 25.2.13, and has been scanned and reported free of viruses by the most recent version of a commercial virus-scanning program.

Date: August 4, 2025                     /s/ *Jennifer Rappoport*
                                         Jennifer Rappoport