No. 23-11184

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA, ex rel., ALEX DOE, Relator,

Plaintiff-Appellee,

v.

PLANNED PARENTHOOD FEDERATION OF AMERICA,
INCORPORATED,

Defendant-Appellant.

On Appeal from the United States District Court for the
Northern District of Texas, Amarillo (No. 2:21-CV-22)

## EN BANC BRIEF FOR THE UNITED STATES AS
## AMICUS CURIAE IN SUPPORT OF PLAINTIFF-APPELLEE

BRETT A. SHUMATE
　*Assistant Attorney General*

NANCY E. LARSON
　*Acting United States Attorney*

MICHAEL S. RAAB
CHARLES W. SCARBOROUGH
BENJAMIN C. WEI
　*Attorneys, Appellate Staff*
　*Civil Division, Room 7235*
　*U.S. Department of Justice*
　*950 Pennsylvania Avenue NW*
　*Washington, DC 20530*
　*(202) 616-2875*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

<u>Plaintiff-appellee:</u>

Relator Alex Doe

*Represented by*:

Heather Gebelin Hacker
Andrew Bowman Stephens
HACKER STEPHENS LLP

<u>Defendant-appellant:</u>

Planned Parenthood Federation of America, Inc.

*Represented by*:

Anton Metlitsky
Leah Godesky
Danny S. Ashby
L. Nicole Allan
O'MELVENY & MYERS LLP

Other Parties:

Defendant Planned Parenthood of Greater Texas, Inc.
Defendant Planned Parenthood Gulf Coast, Inc.
Defendant Planned Parenthood South Texas, Inc.
Defendant Planned Parenthood Cameron County, Inc.
Defendant Planned Parenthood San Antonio, Inc.

*Represented by*:

Christopher M. Odell
Craig D. Margolis
Tirzah S. Lollar
Paula R. Ramer
Alyssa Gerstner
Christian Sheehan
Emily Reeder-Ricchetti
Megan Pieper
Meghan Martin
Marcus Asner
Matthew Diton
Valarie Hays
Jayce Lane Born
ARNOLD & PORTER KAYE SCHOLER LLP

Ryan Patrick Brown
LAW OFFICE OF BLACKBURN & BROWN, LLP

Plaintiff State of Texas

*Represented by*:

Ken Paxton
Amy S. Hilton
William David Wassdorf
OFFICE OF THE TEXAS ATTORNEY GENERAL

State of Louisiana, Real Party in Interest

*Represented by*:

Joseph Scott St. John
OFFICE OF THE LOUISIANA ATTORNEY GENERAL

                                    *s/ Benjamin C. Wei*
                                    Benjamin C. Wei

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

INTEREST OF THE UNITED STATES.................................................................... 1

STATEMENT OF THE CASE .................................................................................... 2

      A.    Statutory Background................................................................................... 2

      B.    Factual Background..................................................................................... 2

      C.    Prior Proceedings ....................................................................................... 4

SUMMARY OF ARGUMENT .................................................................................... 8

ARGUMENT ................................................................................................................ 9

CONCLUSION............................................................................................................ 15

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

*Acoustic Sys., Inc. v. Wenger Corp.*,
  207 F.3d 287 (5th Cir. 2000) ....................................................... 15

*Bayou Fleet, Inc. v. Alexander*,
  234 F.3d 852 (5th Cir. 2000) ....................................................... 14

*Bradley v. Fisher*,
  80 U.S. (13 Wall.) 335 (1872) ....................................................... 11

*Burns v. Reed*,
  500 U.S. 478 (1991) ....................................................... 9, 12, 13

*Burton v. Infinity Cap. Mgmt.*,
  862 F.3d 740 (9th Cir. 2017) ....................................................... 10

*Butz v. Economou*,
  438 U.S. 478 (1978) ....................................................... 11

*Ferri v. Ackerman*,
  444 U.S. 193 (1979) ....................................................... 8, 9, 10, 12

*Imbler v. Pachtman*,
  424 U.S. 409 (1976) ....................................................... 9, 11

*Martinez v. California*,
  444 U.S. 277 (1980) ....................................................... 13

*Montano v. Texas*,
  867 F.3d 540 (5th Cir. 2017) ....................................................... 14

*New Orleans & N.E.R. Co. v. Jopes*,
  142 U.S. 18 (1891) ....................................................... 7

*Nunag-Tanedo v. East Baton Rouge Par. Sch. Bd.*,
  711 F.3d 1136 (9th Cir. 2013) ....................................................... 15

*Planned Parenthood of Greater Tex. Fam. Plan. & Preventative Health Servs., Inc. v. Kauffman*,
  981 F.3d 347 (5th Cir. 2020) ....................................................... 3-4

*Planned Parenthood of Gulf Coast, Inc. v. Gee*,
  862 F.3d 445 (5th Cir.), *en banc review denied per curiam*,
  876 F.3d 699 (5th Cir. 2017) ....................................................... 3

*Robinson v. Volkswagenwerk AG,*
  940 F.2d 1369 (10th Cir. 1991) ............................................................. 10, 11

*Tower v. Glover,*
  467 U.S. 914 (1984) .............................................. 10, 11, 12, 13

*TRW Inc. v. Andrews,*
  534 U.S. 19 (2001) .............................................................. 14

*United States ex rel. Doe v. Planned Parenthood Fed'n of Am., Inc.,* No. 23-11184,
  2025 U.S. App. LEXIS 4505 (5th Cir. Feb. 26, 2025) ........ 3, 4, 5, 6, 7, 9, 11, 12, 13

*United States v. Planned Parenthood Fed'n of Am.,* No. 2:21-CV-022-Z,
  2023 U.S. Dist. LEXIS 241032 (N.D. Tex. Oct. 23, 2023) ................................ 3, 4, 5

*United States v. Texas,*
  507 U.S. 529 (1993) ..................................................................... 7

*Wyatt v. Cole,*
  504 U.S. 158 (1992) ................................................................. 13-14

*Yaselli v. Goff,*
  275 U.S. 503 (1927) .................................................................... 11

## Statutes:

False Claims Act (FCA):
  31 U.S.C. § 3729 *et seq.* ............................................................. 1
    31 U.S.C. § 3729(a)(1)(A) ............................................................. 2
    31 U.S.C. § 3729(a)(1)(C) ............................................................. 2
    31 U.S.C. § 3729(a)(1)(G) ............................................................. 2
    31 U.S.C. § 3729(d) ................................................................. 14
    31 U.S.C. § 3730(a) .................................................................. 2
    31 U.S.C. § 3730(b)(1) ............................................................... 2

Tex. Hum. Res. Code § 36.002 ............................................................. 2

La. Rev. Stat. § 46:438.3 ................................................................ 2

## Other Authority:

Restatement (Second) of Torts (A.L.I. 1977):
  § 656 ............................................................................... 11
  § 674 ............................................................................... 11

## INTEREST OF THE UNITED STATES

The False Claims Act (FCA), 31 U.S.C. § 3729 *et seq.*, is the federal government's primary tool to combat fraud and recover losses due to fraud in federal programs. The United States is a real party in interest in all FCA cases, including those brought by relators under the FCA's qui tam provisions, and has a significant interest in ensuring that courts properly construe the FCA.

The United States accordingly submits this amicus brief in support of plaintiff-appellee to address arguments concerning attorney immunity that Planned Parenthood Federation of America, Inc. has made on appeal.

# STATEMENT OF THE CASE

### A.   Statutory Background

The FCA imposes liability for various forms of fraud on the public fisc.  This includes imposing liability on any person who "knowingly presents, or causes to be presented," a "false or fraudulent claim for payment or approval" to the United States.  31 U.S.C. § 3729(a)(1)(A).  In what is commonly known as a "reverse false claim," the FCA imposes liability on any person who "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government."  *Id.* § 3729(a)(1)(G).  The FCA further imposes liability on any person who "conspires to commit a violation" of any of its provisions.  *Id.* § 3729(a)(1)(C).  FCA actions may be brought by the Attorney General or by a private party in the name of the United States, known as a relator, under the FCA's qui tam provisions.  *Id.* § 3730(a), (b)(1).

Texas and Louisiana have also enacted state law analogs to the FCA that apply to their Medicaid programs.  *See* Tex. Hum. Res. Code § 36.002 (Texas Medicaid Fraud Prevention Act); La. Rev. Stat. § 46:438.3 (Louisiana Medical Assistance Program Integrity Law).

### B.   Factual Background

1.  Planned Parenthood Federation of America, Inc. (PPFA) is a non-profit membership organization.  ROA.18243, 18252.  PPFA does not itself provide medical or healthcare services but supports affiliates that do.  ROA.10165.  PPFA has a

"Litigation & Law" Department (L&L) that provides pro bono advice and representation to PPFA's affiliates. ROA.20257–20258. L&L attorneys are employed by PPFA, but when they represent an affiliate, they have an attorney-client relationship with that affiliate. ROA.18284–18285.

2. In 2015, the States of Louisiana and Texas terminated various PPFA affiliates from their respective state Medicaid programs. *United States ex rel. Doe v. Planned Parenthood Fed'n of Am., Inc.*, No. 23-11184, 2025 U.S. App. LEXIS 4505, at *3 (5th Cir. Feb. 26, 2025) (per curiam). In response, the PPFA affiliates—Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., and Planned Parenthood South Texas, Inc. (collectively, PPFA Affiliates)—filed lawsuits in federal court in Texas and Louisiana challenging the termination decisions. *Id.* The courts in both cases preliminarily enjoined the termination of the PPFA Affiliates from their respective state's Medicaid programs. *Id.* While the injunctions were in effect, the PPFA Affiliates continued to submit claims to Medicaid. *United States v. Planned Parenthood Fed'n of Am.*, No. 2:21-CV-022-Z, 2023 U.S. Dist. LEXIS 241032, at *7 (N.D. Tex. Oct. 23, 2023).

The Louisiana injunction was affirmed by this Court. *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 472-73 (5th Cir.), *en banc review denied per curiam*, 876 F.3d 699 (5th Cir. 2017). Louisiana later settled the case and allowed the terminated affiliate to remain in the Louisiana Medicaid program. *Doe*, 2025 U.S. App. LEXIS 4505, at *4. The Texas injunction was ultimately vacated by the en banc Court.

3

*Planned Parenthood of Greater Tex. Fam. Plan. & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 350 (5th Cir. 2020) (en banc).

**C.    Prior Proceedings**

1.  Relator filed this qui tam action in 2021, alleging that the PPFA Affiliates violated the reverse-false-claims provisions of the FCA and its state law analogues by failing to repay the reimbursements they received for Medicaid services while the injunctions relating to their Medicaid terminations were in place.  *Doe*, 2025 U.S. App. LEXIS 4505, at *4.  In the alternative, relator alleged that the Medicaid claims submitted by the PPFA Affiliates for services provided while the injunctions were in place falsely certified that those services were provided in accordance with state and federal law.  *Id.*; *Doe*, 2023 U.S. Dist. LEXIS 241032, at *39.

Relator also asserted claims directly against PPFA based upon the allegation that PPFA helped its affiliates submit false claims through a strategy "implemented by PPFA's in-house litigation attorneys in their 'Litigation & Law' Department."  *Doe*, 2025 U.S. App. LEXIS 4505, at *5.  More specifically, relator alleges that PPFA steered its affiliates "away from the prescribed administrative appeals and into lengthy legal battles in federal courts," which included obtaining a "grace period" following the vacatur of the preliminary injunction—where Texas agreed to allow 30 days for the PPFA Affiliates to transition their patients to new providers, *Doe*, 2023 U.S. Dist. LEXIS 241032, at *7-8—and then filing a lawsuit in state court on the last day of the "grace period," *id.* at *61 (quotation marks omitted).  Relator further alleges that

4

PPFA further helped its affiliates submit false claims by concealing the "true facts" of the terminations of its Texas affiliates from the Louisiana Medicaid program. *Id.* (quotation marks omitted). Texas elected to intervene in part, the United States declined to intervene, and Louisiana neither elected nor declined to intervene. *Id.* at *8.

The parties cross-moved for summary judgment. As relevant here, the district court held that PPFA was not immunized by the "litigation privilege, which authorizes attorneys to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages." *Doe*, 2023 U.S. Dist. LEXIS 241032, at *61–62 (quotation marks omitted). The court viewed this privilege as inapplicable because relator was suing PPFA, not the individual attorneys representing the PPFA Affiliates. *See id.* at *62. Additionally, the court found nothing in the text of the FCA that "purports to preclude liability if the person who 'causes' the submission of false claims just so happens to be a lawyer." *Id.*

2. PPFA appealed the district court's order under the collateral-order doctrine, which "permits interlocutory appeals from a small category of decisions that, although they do not end the litigation, must nonetheless be considered final." *Doe*, 2025 U.S. App. LEXIS 4505, at *7 (alteration and quotation marks omitted). PPFA argued that the district court's denial of the "litigation privilege" qualified as such a decision. *Id.*

5

The panel agreed, holding that "attorney immunity is akin to immunity from suit." *Id.* at *9.

Turning to the substance of the arguments, the panel held that the "L&L attorneys would have immunity from the federal claims under federal law." *Doe*, 2025 U.S. App. LEXIS 4505, at *18. To reach that conclusion, the panel relied on the established immunity for judges, federal prosecutors, and agency attorneys and administrative law judges for their role in the judicial process. *Id.* at *18–21. The panel recognized that "the caselaw does not explicitly hold that private attorneys are entitled to absolute immunity with respect to their activities within litigation" but concluded that extending absolute immunity to PPFA was nonetheless justified because "the functions of private attorneys and prosecutors in furtherance of litigation are substantially the same: presenting evidence, formulating legal strategy, and performing other advocacy duties as is typical in the justice system." *Id.* at *21–22. The panel further reasoned that "a private attorney's role in the legal system is apt to spur retaliatory or intimidatory lawsuits by third parties," which would have a "chilling effect … on private attorneys' willingness to participate in unpopular cases" and incentivize private attorneys to "consider their own legal exposure to claims made by a third party" rather "than zealously represent their own client." *Id.* at *22–23. The panel thus concluded that "private attorneys are advocates—who share the same functions, vulnerabilities to litigious third parties, and restraints inherent in the judicial

process, as prosecutors do"—and are therefore "absolutely immune from Relator's federal claims." *Id.* at *23–24.

Having determined that the L&L attorneys had immunity from suit, the panel next held that PPFA could assert that immunity even though the L&L attorneys are not parties to the suit. *Doe*, <u>2025 U.S. App. LEXIS 4505, at *29</u>. The panel relied upon the "general principle[] that, if the party who actually causes the injury is free from all civil and criminal liability therefor, his employer must also be entitled to a like immunity" from respondeat superior liability. *Id.* at *27 (quoting *New Orleans & N.E.R. Co. v. Jopes*, <u>142 U.S. 18, 24</u> (1891)).

3. Finally, the panel held that the FCA did not override attorney immunity because "[c]ommon law defenses apply unless explicitly excluded by statute." *Doe*, <u>2025 U.S. App. LEXIS 4505, at *29</u>. The panel viewed federal law as requiring "statutes which invade the common law … to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident." *Id.* (alteration in original) (quoting *United States v. Texas*, <u>507 U.S. 529, 534</u> (1993)). Since nothing in the "FCA directly omits the privilege or defense of attorney immunity," the panel reasoned it must apply here. *Id.*

## SUMMARY OF ARGUMENT

The panel erred in holding that private attorneys are entitled to the same absolute immunity from suit under federal law as public prosecutors. The Supreme Court's decision in *Ferri v. Ackerman*, 444 U.S. 193 (1979), makes clear that immunity for prosecutors, who serve the public, does not extend to private or appointed attorneys, whose duty is to their clients. The panel did not discuss *Ferri* and relied only on cases that recognized the historic immunity given to public officials. But the common law has never extended the same kind of absolute immunity to private lawyers, and courts cannot recognize new immunities applicable to the FCA that lack any historic roots based on what they believe to be sound public policy today. The panel's reasoning—that private attorneys perform functions similar to those of prosecutors and face similar risks of retaliatory suits—overlooks the "marked difference" between a prosecutor's duty to the public and a private lawyer's duty to a client. *Id.* at 202–03. Accordingly, this Court should conclude that the federal common law immunity enjoyed by prosecutors does not extend to the private attorneys of the L&L Department within PPFA. The United States takes no position on any other issue presented in this interlocutory appeal.

# ARGUMENT

The panel erred in extending to private attorneys the same absolute immunity afforded to public prosecutors under the federal common law on the basis that both "share the same functions, vulnerabilities to litigious third parties, and restraints inherent in the judicial process." *United States ex rel. Doe v. Planned Parenthood Fed'n of Am., Inc.*, No. 23-11184, 2025 U.S. App. LEXIS 4505, at *23–24 (5th Cir. Feb. 26, 2025) (per curiam).  Because no such immunity exists for private attorneys, this Court should reject PPFA's arguments to the contrary.

1.  Private attorneys, like witnesses, are "immune from damages liability at common law for making false or defamatory statements in judicial proceedings (at least so long as the statements were related to the proceeding), and also for eliciting false and defamatory testimony from witnesses." *Burns v. Reed*, 500 U.S. 478, 489–90 (1991).  Public prosecutors enjoy an additional immunity for "initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  But that additional immunity does not apply to private attorneys.  In *Ferri v. Ackerman*, 444 U.S. 193 (1979), the Supreme Court made clear that the absolute immunity available to "other federal officers" in criminal prosecutions—"the judge, the prosecutor, and the grand jurors"—"should [not] be shared by" court-appointed defense counsel.  *Id.* at 202.  The Court stressed "a marked difference between the nature of counsel's responsibilities and those of other officers of the court." *Id.*  Unlike public officials, who "represent the interest of society as a whole" and therefore require immunity "to

9

deal fearlessly and impartially with the public at large," *id.* at 202–03, defense counsel's "principal responsibility is to serve the undivided interests of his client," *id.* at 204. For that reason, the Court concluded, the "primary rationale" for official immunity "does not apply to defense counsel sued for malpractice by his own client." *Id.*; *see also Tower v. Glover*, 467 U.S. 914, 921 (1984) (no immunity for "intentional misconduct" by public defenders).

That reasoning controls here. The L&L attorneys were privately retained counsel. They were not "public servants" charged with representing "society as a whole" but instead had a duty "to serve the undivided interests of [their] client," the PPFA Affiliates. *Ferri*, 444 U.S. at 202–04; ROA.18284–18285. Indeed, in this case, "an indispensable element" of the L&L attorneys' role was to "act independently of the Government and to oppose it in adversary litigation." *Ferri*, 444 U.S. at 204. L&L attorneys therefore were not called upon to "deal fearlessly and impartially with the public at large," a long-recognized justification for absolute immunity for public prosecutors. *Id.* at 203. For that reason, absolute immunity "is simply inapplicable in this case." *Id.* at 205; *see also Burton v. Infinity Cap. Mgmt.*, 862 F.3d 740, 749 (9th Cir. 2017) ("quasi-judicial immunity does not extend to acts of private advocacy"); *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1372–73 (10th Cir. 1991) ("While we recognize that prosecutors and government lawyers defending civil actions have been granted absolute immunity on similar claims, the cases do not support an analogous common law tradition for private lawyers.").

2.  The panel did not discuss *Ferri* and relied exclusively on cases recognizing immunity for public officials.  Its decision cited only precedents involving judges, prosecutors, and agency attorneys or administrative law judges.  *Doe*, 2025 U.S. App. LEXIS 4505, at *19–21 (discussing *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335 (1872); *Yaselli v. Goff*, 275 U.S. 503 (1927) (per curiam); and *Butz v. Economou*, 438 U.S. 478 (1978)).  The panel acknowledged that these cases "do[] not explicitly hold that private attorneys are entitled to absolute immunity" but nonetheless reasoned that private attorneys' "advoca[cy] within the judicial process" warranted such protection.  *Id.* at *21–22.

That approach was flawed at the outset.  A finding of immunity must rest on "the immunity historically accorded the relevant official at common law and the interests behind it."  *Imbler*, 424 U.S. at 421.  Here, the panel identified no common law tradition of private attorneys having the same sort of immunity as public prosecutors, and for good reason.  The common law draws a sharp distinction between public prosecutors, who are afforded immunity for initiating or continuing proceedings, and private lawyers, who are not.  *See* Restatement (Second) of Torts § 674 (A.L.I. 1977), Westlaw (database updated Oct. 2024) (tort of wrongful civil proceedings); *id.* § 656 ("A public prosecutor acting in his official capacity is absolutely privileged to initiate, institute, or continue criminal proceedings."); *Robinson*, 940 F.2d at 1372–73.  Indeed, the panel conceded the absence of any supporting tradition when it recognized that "caselaw does not explicitly hold that private

attorneys are entitled to absolute immunity with respect to their activities within litigation." *Doe*, <u>2025 U.S. App. LEXIS 4505, at *21</u>–22; *Tower*, <u>467 U.S. at 921</u> (noting that there was no suggestion a "privately retained lawyer" enjoyed absolute immunity). That concession should have ended the inquiry.

Contrary to the panel's reasoning, there is no basis for extending the absolute immunity accorded to public prosecutors to private attorneys. The primary rationale the panel articulated for doing so was the equivalence of the "functions" of prosecutors and private attorneys, both of whom present evidence, formulate strategy, and advocate in court. *Doe*, <u>2025 U.S. App. LEXIS 4505, at *22</u>. But the Supreme Court squarely rejected that equivalence in *Ferri*, emphasizing that there is a "marked difference" between counsel's duty "to serve the undivided interests of his client" and the prosecutor's duty to "represent the interest of society as a whole." *Ferri*, <u>444 U.S. at 202</u>–04. That distinction "has long been recognized as an acceptable justification for official immunity," and its absence here is dispositive. *Id.* at 203.

The panel also expressed concern that, like prosecutors, private attorneys may face "retaliatory or intimidatory lawsuits by third parties," which could chill participation in unpopular cases. *Doe*, <u>2025 U.S. App. LEXIS 4505, at *22</u>–23. But courts "do not have a license to establish immunities … in the interests of what [they] judge to be sound public policy." *Tower*, <u>467 U.S. at 922</u>–23. Moreover, the relevant concern is not with litigation risk in general but with "interference with the conduct closely related to the judicial process." *Burns*, <u>500 U.S. at 494</u>. That concern is already

addressed for private attorneys through their limited immunity "for making false or defamatory statements in judicial proceedings (at least so long as the statements were related to the proceeding), and also for eliciting false and defamatory testimony from witnesses." *Id.* at 489–90. Expanding absolute immunity to cover their broader conduct is a policy judgment the Court has repeatedly disclaimed. *Tower*, 467 U.S. at 922–23 ("It is for Congress to determine whether … litigation has become too burdensome … and, if so, what remedial action is appropriate."); *Burns*, 500 U.S. at 487 ("We have been quite sparing in our recognition of absolute immunity, and have refused to extend it any further than its justification would warrant." (citation and quotation marks omitted)).

3. Finally, the panel did not purport to find attorney immunity under Texas and Louisiana state law relevant to liability under the FCA; it instead invoked those state-law immunities only with respect to those States' FCA analogs. *See Doe*, 2025 U.S. App. LEXIS 4505, at *18. The United States takes no position on the application of state-law immunities to such state-law claims. But those state-law immunities do not, by themselves, operate as a defense to liability under the FCA. *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980) ("Conduct by persons acting under color of state law which is wrongful under 42 U. S. C. § 1983 or § 1985 (3) cannot be immunized by state law." (quotation marks omitted)).

In the Section 1983 context, the Supreme Court has explained that common-law immunities can apply if, at the time of the statute's enactment, they were "so

firmly rooted in the common law and … supported by such strong policy reasons that Congress would have specifically so provided had it wished to abolish" them. *Wyatt v. Cole*, 504 U.S. 158, 164 (1992) (quotation marks omitted).  But even assuming the same logic would apply to the FCA, there is, as discussed above, no basis to conclude that the immunity for private attorneys recognized by the panel was "firmly rooted in the common law" at the time of the FCA's enactment.  And there is particularly little basis to read such an immunity into the FCA given its express statutory exemptions. *See*, *e.g.*, 31 U.S.C. § 3729(d) (excluding liability for "claims, records, or statements made under the Internal Revenue Code of 1986"); *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied in the absence of evidence of a contrary legislative intent." (quotation marks omitted)).

For these reasons, this Court should conclude that the federal common law immunity afforded to public prosecutors does not extend to the private attorneys of PPFA's L&L Department.  PPFA has suggested other defenses to liability it could assert, including application of the *Noerr-Pennington* doctrine, which protects "effort[s] to sway public officials regardless of the private citizen's intent." *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 859 (5th Cir. 2000).  Although PPFA has raised that argument in this Court, PPFA Br. 43–46, that was not part of the district court's decision. *Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017) ("[A] court of appeals sits as a court of review, not of first view." (quotation marks omitted)).  Even were

that not the case, the *Noerr-Pennington* doctrine "provides only a defense to liability, not an immunity from suit," and is therefore not "immediately reviewable on appeal under the collateral order doctrine." *Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287, 294–95 (5th Cir. 2000); *Nunag-Tanedo v. East Baton Rouge Par. Sch. Bd.*, 711 F.3d 1136, 1141 (9th Cir. 2013) (finding no pendent jurisdiction to consider the *Noerr-Pennington* defense).

## CONCLUSION

For the foregoing reasons, this Court should reject PPFA's arguments on the issues addressed in this brief.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

NANCY E. LARSON
  *Acting United States Attorney*

MICHAEL S. RAAB
CHARLES W. SCARBOROUGH
BENJAMIN C. WEI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7235*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-2875*

September 2025

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.  Notice of this filing will be sent electronically by operation of the Court's electronic filing system to all counsel of record.

*s/ Benjamin C. Wei*
Benjamin C. Wei

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) because it contains 3424 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.


*s/ Benjamin C. Wei*
Benjamin C. Wei