# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 26, 2025

Lyle W. Cayce
Clerk

———————

No. 23-11184

———————

United States of America, *ex rel*, Alex Doe, *Relator*,

*Plaintiff—Appellee*,

*versus*

Planned Parenthood Federation of America,
Incorporated,

*Defendant—Appellant*.

———————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:21-CV-22

———————————————————

Before Barksdale, Southwick, and Graves, *Circuit Judges*.

Per Curiam:[*]

Relator sued Planned Parenthood Federation of America on a respondeat superior theory of liability under the False Claims Act and its state law analogues. The district court granted Planned Parenthood summary judgment on the reverse-false-claims count but denied summary judgment on Relator's implied-false-certification claim and conspiracy claim. Because

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-11184

Planned Parenthood is entitled to immunity for the acts of its attorneys, it was entitled to summary judgment on these claims. Accordingly, we REVERSE and REMAND.

## BACKGROUND

### Planned Parenthood Federation of America

Planned Parenthood Federation of America, Inc. ("PPFA") is a non-profit membership organization that supports local affiliate members providing medical and healthcare services. Each PPFA Affiliate is its own 501(c)(3) organization with its own CEO and board of directors. Three of those affiliates, relevant to this appeal, are Defendants Planned Parenthood Gulf Coast ("PPGC"),[1] Planned Parenthood of Greater Texas ("PPGT"), and Planned Parenthood South Texas ("PPST") (collectively, "Affiliate Defendants").

PPFA has a litigation department, "Litigation & Law" ("L&L"), that provides legal advice and representation to PPFA affiliates and at times to PPFA. Access to L&L is one of the many ways that PPFA supports its affiliates. Although L&L attorneys are employed by PPFA, they have separate duties to the PPFA affiliates as their clients and PPFA has no control over whether L&L represents an affiliate in a given matter.

### Underlying litigation

In April 2015, Relator Alex Doe entered a PPGC facility and recorded conversations with PPGC staff regarding the potential for PPGC to facilitate donations of fetal tissue for research. Relator Alex Doe released portions of the footage publicly, and in response, Louisiana and Texas sought to

---

[1] PPGC operated in Texas from 2010 to 2021. From 2010 to the present, PPGC has also operated in Louisiana.

terminate the Affiliate Defendants' enrollment in each state's Medicaid programs. In September 2015, Louisiana Department of Health ("LDH") issued a notice of termination to PPGC. In October 2015, Texas' Health and Human Services Commission's Office of the Inspector General issued notices of termination to PPGC, PPGT, and PPST. The notices stated that they would become administratively final thirty days after issuance if not challenged through the state administrative process. After consultation with L&L and other counsel, Affiliate Defendants decided to pursue injunctions of both terminations in federal court rather than challenging them through the state administrative process.

In October 2015, the Louisiana court enjoined Louisiana from terminating PPGC, and a panel of this court affirmed. *Planned Parenthood Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 459–60 (5th Cir. 2017), *en banc review denied*, 876 F.3d 699 (2017) (per curiam). The Texas district court also entered a preliminary injunction prohibiting Texas from terminating the Affiliate Defendants' Medicaid agreements, but our en banc court reversed in November 2020. *Planned Parenthood of Greater Tex. v. Kauffman*, 981 F.3d 347, 350 (5th Cir. 2020) (en banc).

After the *Kauffman* decision, the Affiliate Defendants consulted with their attorneys, including L&L, and obtained Texas' agreement to a one-month grace period before their termination from Texas Medicaid. The Louisiana district court however, rejected the State's request to vacate the injunction in light of *Kauffman*. Louisiana later settled the case and allowed PPGC to remain in the Louisiana Medicaid program where it remains to this day.

## Procedural history

Relator filed his complaint on February 5, 2021. The United States declined intervention. Relator brought claims against the Affiliate

No. 23-11184

Defendants asserting that they violated federal and state False Claims Act reverse-false-claims provisions—which prohibit withholding money from the government when there is an obligation to pay—because they failed to repay the reimbursements they received for Medicaid services while the injunctions were in place. In the alternative, Relator alleged that the Medicaid claims submitted by Affiliate Defendants for services provided while the injunctions were in place were knowingly false at the time they were made (the implied-false-certification claim). Finally, as against the Affiliate Defendants, Relator asserted that the Affiliate Defendants conspired with each other and PPFA to violate the False Claims Act ("FCA"), 31 U.S.C. § 3729, the Texas Medicaid Fraud Prevention Act ("TMFPA"), Tex. Hum. Res. Code § 36.002, and the Louisiana Medical Assistance Program Integrity Law ("LMAPIL"), La. Rev. Stat. § 46.438.3. Relator also seeks to hold PPFA directly liable under the FCA and its state analogues. Specifically, Relator alleges that "PPFA helped the Affiliate Defendants avoid their obligation to repay money to Texas and Louisiana Medicaid by masterminding and orchestrating a strategy—implemented by PPFA's in-house litigation attorneys in their "Litigation & Law" Department ("L&L"), and other PPFA employees, in furtherance of PPFA's mission[.]"

The parties cross moved for summary judgment, and the district court granted PPFA summary judgment on Relator's reverse-false-claims count, the only count in which Texas joined, leaving only Relator's implied-false-certification claim and the conspiracy claim,[2] neither of which are joined by Texas. The district court denied PPFA summary judgment on the latter two claims because it concluded that the litigation privilege does not apply since

---

[2] Relator's conspiracy claim is grounded solely in the TMFPA and the LMAPIL because the district court dismissed the federal claim for conspiracy to commit healthcare fraud.

No. 23-11184

Relator is not attempting to attach personal liability to the L&L attorneys, but rather respondeat superior liability to PPFA; and because nothing in the FCA and its analogues purport to preclude liability if the person who causes the submission of false claims is an attorney. Accordingly, the district court concluded there was a material fact dispute as to whether PPFA's scheme allowed Affiliate Defendants to continue seeking reimbursement even after they were terminated from the programs.

PPFA appealed the district court's order under the collateral-order doctrine and requested a stay. The district court granted the stay pending appeal, holding that its rejection of any litigation privilege or attorney immunity is an immediately appealable collateral order.[3] Relator filed a Motion to Dismiss the appeal for lack of jurisdiction, which was carried with the case.

## STANDARD OF REVIEW

We review a district court's denial of an immunity defense and its interpretation of state law de novo. *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 345 (5th Cir. 2016).

This court reviews the district court's grant of summary judgment de novo, "viewing all facts and drawing all inferences in a light most favorable to the non-moving party." *Harville v. City of Houston*, 945 F.3d 870, 874 (5th Cir. 2019). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could

---

[3] Accordingly, the only issue for appeal is whether PPFA can assert immunity under the FCA and its state analogues for the actions of its L&L attorneys.

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

### I. Jurisdiction

Relator argues that we lack jurisdiction to hear this appeal. Both his Motion to Dismiss and his appellate brief argue that this is an appeal from an interlocutory order denying summary judgment, and the claim of immunity by PPFA does not qualify as "substantial," to justify this court's collateral order review.

The collateral order doctrine "permit[s] interlocutory appeals 'from a small category of decisions that, although they do not end the litigation, must nonetheless be considered "final."'" *BancPass, Inc. v. Highway Toll Admin., L.L.C.*, 863 F.3d 391, 397 (5th Cir. 2017) (quoting *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 42 (1995)). "That small category includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Id.* at 397 (quoting *Swint*, 514 U.S. at 42).

A "claim of immunity must be 'substantial' to justify an appellate court's collateral order review." *Martin v. Halliburton*, 618 F.3d 476, 483 (5th Cir. 2010) (quoting *Hous. Cmty. Hosp. v. Blue Cross & Blue Shield of Tex., Inc.*, 481 F.3d 265, 268–69 (5th Cir. 2007)). "To be 'substantial' a claim must be more than merely colorable." *Id.* (citation omitted). We have often said the "relevant inquiry in determining whether an 'immunity' is subject to immediate appeal under the collateral order doctrine is whether the asserted immunity is from suit or merely from liability." *Id.* (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 524 (1988)). "The critical question . . . is whether 'the essence' of the claimed right is a right not to stand trial." *Id.* (citation omitted).

No. 23-11184

In *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024), we clarified that "immunity from suit" does not necessarily mean that the defendant is claiming immunity from every claim asserted against them in the lawsuit. There, the defendant's Eleventh Amendment immunity defense pertained to some, but not all, of the plaintiff's claims. *Id.* We acknowledged that some of our prior cases, in dicta, construed "immunity from suit" as pertaining to claimed immunity from the "entire suit." *Id.* at 322 (first citing *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 449 (5th Cir. 2022); then citing *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 411 (5th Cir. 2004)). However, we then explained that we previously exercised jurisdiction over an interlocutory appeal in *BancPass*, even though the defendant had asserted absolute immunity over a defamation claim but not a tortious interference with contract claim. *Mi Familia*, 105 F.4th at 322 (citing *BancPass*, 863 F.3d at 398). And we further reasoned that, in the context of qualified immunity, the Supreme Court has instructed us to exercise jurisdiction when a defendant asserts qualified immunity over only some claims, *see id.* at 324 (citing *Behrens v. Pelletier*, 516 U.S. 299 (1996))—despite the fact that the Supreme Court had likewise referred to qualified immunity as an "entitlement . . . [to] *immunity from suit* rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). In short, "our focus is on 'the entire category to which a claim belongs,'"[4] examining whether "an essential aspect of the claim is the right to be free of the burdens" of litigation.[5]

In examining whether we may exercise jurisdiction over the denial of these immunities, we therefore must analyze whether PPFA has made a

---

[4] *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009) (citation omitted).

[5] *Van Cauwenberghe*, 486 U.S. at 524.

substantial showing of entitlement to an immunity akin to immunity from suit (as contextualized above) in each jurisdiction. "To determine the applicable [state] law, 'we look first to the decisions of the Supreme Court [of the state],' and if that court has not ruled, we then project that court's likely resolution of a case presenting facts such as are before us." *Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 505 (5th Cir. 2019) (citation omitted). "In our evaluation, 'we typically treat state intermediate courts' decisions as the strongest indicator of what a state supreme court would do, absent a compelling reason to believe that the state supreme court would reject the lower courts' reasoning.'" *Id.* (citation omitted).

We conclude that under federal, Texas, and Louisiana law, attorney immunity is akin to immunity from suit, and this court must permit the collateral order appeal.

### A. Federal Law

The Supreme Court, in reaffirming the holding of *Imbler v. Pachtman,* 424 U.S. 409 (1976), held that "the common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties." *Butz v. Economou*, 438 U.S. 478, 510 (1978) (quoting *Imbler*, 424 U.S. at 422–23). This is so because "[t]he prosecutor's role in the criminal justice system was likely to provoke 'with some frequency' retaliatory suits by angry defendants." *Id.* (citation omitted). The Supreme Court "held that the defendant in that case was entitled to absolute immunity with respect to his activities as an advocate, 'activities [which] were intimately associated with the judicial phase of the criminal process, and thus were functions to which the reasons for absolute immunity apply with full force.'" *Id.* at 511 (quoting *Imbler*, 424 U.S. at 430). The Court found that it is not the location of the advocate or official or where they are employed that matters, but that the

"cluster of immunities protecting the various participants in judge-supervised trials stems from the characteristics of the judicial process rather than its location." *Id.* at 512. Finally, the Court found "no substantial difference between the function of the agency attorney in presenting evidence in an agency hearing and the function of the prosecutor who brings evidence before a court." *Id.* at 516.

Similar here, there is no substantial difference in the duties performed by the L&L attorneys within the scope of their representation as compared to attorneys not employed by a corporation. Their duties as attorneys remain the same: presenting evidence, formulating legal strategy, and other advocacy duties as is typical in the justice system. The Supreme Court has explained "[a]bsolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Id.* at 512. Accordingly, under federal law we must permit the appeal as a collateral order because attorney immunity, an immunity the Supreme Court has recognized as a right to not stand trial (albeit in the context of prosecutors and agency attorneys), is germane to the claims asserted against PPFA.

## B. Texas Law

In *Troice v. Proskauer Rose*, 816 F.3d at 346, this court held that under Texas law "attorney immunity is properly characterized as a true immunity from suit, not as a defense to liability."

> In short, because the policies underlying attorney immunity support the conclusion that Texas courts seek to protect attorneys against even defending a lawsuit, and because Texas courts describe conduct covered by attorney immunity as not actionable (and attorneys engaging in that conduct as immune from suit), we conclude that the Texas Supreme Court would consider attorney immunity to be a true immunity from suit.

No. 23-11184

As a result, we hold that the district court's order denying defendants' motions to dismiss on the basis of attorney immunity under Texas law is an appealable collateral order.

*Id.* at 348. Thus, as PPFA correctly contends, this appeal is appropriate under Texas law and our precedent.

## C. Louisiana Law

Although this court has not definitively spoken on the contours of Louisiana law, permitting the appeal under the doctrine of attorney immunity is appropriate. "Louisiana subscribes to the traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting in his client's behalf." *Montalvo v. Sondes*, 637 So. 2d 127, 130 (La. 1994). Louisiana believes "it is essential for the petition to allege facts showing specific malice or an intent to harm on the part of the attorney in persuading his client to initiate and continue the suit." *Id.* Here, Relator makes no allegations of specific malice or an intentional tort on behalf of the L&L attorneys. *See id.* (dismissing the suit because it did not establish that the attorneys intended to cause direct harm to the Plaintiff in conducting their legal duties, and stating that negligence or malpractice is not enough). Additionally, the Louisiana court of appeal has held that to hold attorneys liable, the non-client must specifically allege that the attorney was acting outside the scope of their legal duties in their actions. *See Sondes v. Sears, Roebuck & Co.*, 501 So. 2d 829, 832 (La. Ct. App. 1986) (Plaintiff "makes no specific allegation in his petition that the [attorney] acted outside the scope of his authority as [the Defendant's] attorney. Under these circumstances [the attorney] cannot be held personally liable for alleged wrongs committed while acting on [the Defendant's] behalf."). Accordingly, under Louisiana law, the L&L attorneys are likely immune from suit where Relator did not plead specific facts to show malice or an intent to harm, and where they were acting in their capacity as Affiliate Defendants' attorneys.

No. 23-11184

Thus, PPFA's claim of immunity is "substantial" because a large part of Relator's claims are driven by the actions of PPFA's L&L attorneys.[6] Therefore, if the attorneys and PPFA are entitled to immunity, those claims would cease to exist and PPFA would be entitled to summary judgment.

Finally, Relator makes a myriad of arguments that PPFA waived any arguments of attorney immunity because it failed to raise it below. This argument is without merit. As the district court accurately explained: "True, PPFA did not assert waiver in their initial pleadings—but that is because Plaintiffs clearly expounded their theory concerning PPFA's L&L department only at summary judgment." Not only does the record support this finding, but in its opposition to Relator's and Texas' motions for summary judgment, PPFA made multiple arguments that lawyers cannot be held liable to a third party for actions taken within the scope of representation, and argued this to be true under the FCA, TMFPA, and LMAPIL. **ROA.8564–72** (arguing that Plaintiffs' arguments are "precluded as a matter of law" and that a lawyer providing advice within the scope of her client representation cannot be held liable by a third party, and that all Plaintiffs' claims fall within the scope of L&L's representation, thus PPFA is not liable). In the same vein, Relator also argues that PPFA waived the argument of "like immunity." However as stated above, not only did PPFA assert attorney immunity; it also argued that it could not be held directly or indirectly liable and that L&L's actions could not be imputed to PPFA and any actions taken were covered attorney conduct. Accordingly, PPFA sufficiently preserved the argument that they are entitled to attorney

---

[6] The conduct alleged by Relator is discussed in more detail *infra* Section III.

No. 23-11184

immunity or "like immunity"[7] for any conduct committed by L&L in the scope of its representation of Affiliate Defendants.

## II. Burden of Proof

The parties disagree as to who has the burden of proof on PPFA's immunity claims. PPFA puts that burden on Relator to "disprove" attorney immunity, likening it to qualified immunity. Relator argues the burden is properly placed on PPFA as this is not qualified immunity, and PPFA is the party seeking summary judgment. Relator is correct. "In the usual case, the party who seeks a summary judgment must show by affidavit or other evidentiary materials that there is no genuine dispute as to any fact material to resolution of the motion." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). "Thus, if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Id.* Accordingly, PPFA has the burden to prove that they are entitled to immunity.

## III. Attorney Immunity

Prior to determining whether PPFA has immunity from suit for the conduct of its L&L attorney employees, we must first determine whether the attorney employees would have immunity themselves. Because the answer to this question will largely depend on the conduct alleged,[8] we first look to

---

[7] Relator points to no case law to support the argument that PPFA must use the exact terminology of "like immunity" to sufficiently preserve their argument. Even without using that exact terminology, the district court correctly found that PPFA was alleging that they could not be held "directly or indirectly liable" for covered attorney conduct "as a matter of law," and that they raised these arguments "at a pragmatically sufficient time" since Relator did not clarify his claims until summary judgment.

[8] *See Burns v. Reed*, 500 U.S. 478, 492, 496 (1991).

No. 23-11184

Relator's claims. As to Relator's implied-false-certification claim, Relator alleges that:

> PPFA helped the Affiliate Defendants avoid their obligation to repay money to Texas and Louisiana Medicaid by masterminding and orchestrating a strategy— implemented by PPFA's in-house litigation attorneys in their "Litigation & Law" Department ("L&L"), and other PPFA employees, in furtherance of PPFA's mission—to enable Affiliate Defendants to continue to seek reimbursement from Texas and Louisiana Medicaid after the effective date of their terminations and continue in their refusal to return those funds.

Specifically, Relator makes five assertions:

> 1. [U]pon learning that Affiliate Defendants were facing termination proceedings initiated by LDH and the Texas HHSC-OIG, PPFA steered Affiliate Defendants away from the prescribed administrative appeals and into lengthy legal battles in the Middle District of Louisiana and the Western District of Texas.

> 2. [A]fter learning that Fifth Circuit had vacated the preliminary injunction that prohibited Texas from implementing the terminions, PPFA helped Affiliate Defendants craft a request to HHSC for a "grace period" for the purpose of transitioning their patients to new Medicaid providers—mere pretext to allow Affiliate Defendants to continue to bill Texas Medicaid temporarily.

> 3. [O]n the last day of the HHSC "grace period," PPFA assisted Affiliate Defendants in filing an unsuccessful lawsuit in Travis County District Court, asserting legal theories for which they had "no authority."

> 4. PPFA participated in PPGC's efforts to conceal the true facts of their termination and their affiliates' Texas

terminations from LDH and the Middle District of Louisiana in an effort to maximize Medicaid revenue.

5. PPFA *continues* to represent and assist Affiliate Defendants in their ongoing efforts to withhold money that they are legally obligated to return to the Texas and Louisiana Medicaid programs.

As to Relator's conspiracy claim under Texas and Louisiana law, he alleges that:

1. PPFA, and the Affiliate Defendants, conspired to violate Texas and Louisiana law by continuing to use the courts or avoiding updating the courts as to developments impacting the legal basis for their claims.

2. PPFA and the Affiliate Defendants conspired by continuing to file claims for reimbursement.

3. PPFA conspired with the Affiliate Defendants in requesting a grace period.

We now look to whether the L&L attorneys would have immunity from the federal claims under federal law, the Texas state-law claims under Texas law, and the Louisiana state-law claims under Louisiana law. *See Troice v. Proskauer Rose*, 816 F.3d at 348–49 (applying Texas's attorney immunity doctrine in determining whether attorneys were entitled to immunity from Texas Securities Act claims); *Butz*, 438 U.S. at 508–17 (applying federal common law in examining whether agency attorneys were immune from constitutional claims).

### A. Federal Law

In determining whether absolute immunity applies to a defendant's conduct, the Supreme Court has traditionally "undertaken 'a considered inquiry into the immunity historically accorded the relevant [defendant] at

No. 23-11184

common law and the interests behind it.'" *Butz*, 438 U.S. at 508 (quoting *Imbler*, 424 U.S. at 421). "In *Bradley v. Fisher*, the Court analyzed the need for absolute immunity to protect judges from lawsuits claiming that their decisions had been tainted by improper motives." *Butz*, 438 U.S. at 508 (citing *Bradley v. Fisher*, 13 Wall. 335, 347 (1872)). There, the Court began by explaining that "acts done by judges 'in the exercise of their judicial functions' had been 'the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country.'" *Id.* (citation omitted). The Court then reasoned that such immunity was necessary to maintain "that independence without which no judiciary can either be respectable or useful." *Id.* at 509 (citation omitted). Accordingly, "judges were held to be immune from civil suit 'for malice or corruption in their action whilst exercising their judicial functions within the general scope of their jurisdiction.'" *Id.* (citation omitted).

This principle was then extended to federal prosecutors in *Yaselli v. Goff*, 275 U.S. 503 (1927), *aff'g* 12 F.2d 396 (2d Cir. 1926). *Butz*, 438 U.S. at 509. In that case, the court of appeals discussed "common-law precedents extending absolute immunity to parties involved in the judicial process: judges, grand jurors, petit jurors, *advocates*, and witnesses." *Id.* (emphasis added). The Court then reasoned that absolute immunity is necessary for grand jurors so that they are not "harassed by a vicious suit for acting according to their consciences[,]" and "the public prosecutor, in deciding whether a particular prosecution shall be instituted or followed up, performs much the same function as a grand jury." *Id.* at 510 (citation omitted) (cleaned up). As the Supreme Court explained in *Imbler*, 424 U.S. at 422–23, which found absolute immunity in an unlawful prosecution case brought against a state prosecutor: "[t]he prosecutor's role in the criminal justice system was likely to provoke 'with some frequency' retaliatory suits by angry defendants" that could "not only . . . discourag[e] the initiation of

prosecutions, but also . . . affect[] the prosecutor's conduct of the trial." *Butz*, 438 U.S. at 510 (citation omitted). Therefore, "the Court held that the defendant in that case was entitled to absolute immunity with respect to his activities as an *advocate*[.]" *Id.* at 511 (emphasis added).

The principle was also extended to agency attorneys and administrative law judges in agency proceedings in *Butz*. In *Butz*, the Court recounted the aforementioned precedents and explained that "[t]he cluster of immunities protecting the various participants in judge-supervised trials stems from the characteristics of the judicial process rather than its location." *Id.* at 512. Thus, "absolute immunity is . . . necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Id.* Sufficient safeguards are built into the judicial process to "reduce the need for private damages actions as a means of controlling unconstitutional conduct." *Id.* "Advocates are restrained not only by their professional obligations, but by the knowledge that their assertions will be contested by their adversaries in open court." *Id.* Recognizing these principles, the Supreme Court concluded that "adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages." *Id.* at 512–13. Therefore, "agency officials performing certain functions analogous to those of a prosecutor [or a judge] should be able to claim absolute immunity with respect to such acts." *Id.* at 515.

Considering these cases, we conclude that under federal common law, the L&L attorneys have absolute immunity from Relator's claims. While the caselaw does not explicitly hold that private attorneys are entitled to absolute immunity with respect to their activities within litigation, it repeatedly focuses on a defendant's role as an advocate within the judicial process as the reason for affording immunity. *See id.* at 509–12 (first citing *Yaselli*, 275 U.S.

at 503; then citing *Imbler*, 424 U.S. at 409). For instance, in *Butz*, the Supreme Court referenced the common law's recognition of immunity for advocates, acting as advocates, and then applied immunity to agency officials by analogizing the function of agency attorneys in agency proceedings to the function of a prosecutor in judicial proceedings. *Id.* at 508–17; *see also Burns*, 500 U.S. at 493 ("'[T]he precise contours of official immunity' need not mirror the immunity at common law[.]" (citation omitted)). Similarly, here, the functions of private attorneys and prosecutors in furtherance of litigation are substantially the same: presenting evidence, formulating legal strategy, and performing other advocacy duties as is typical in the justice system. Like prosecutors, a private attorney's role in the legal system is apt to spur retaliatory or intimidatory lawsuits by third parties. If private attorneys did not have immunity for their activities within the scope of litigation, they would be subject to suit from a third party every time they represent an unpopular client or advance an unpopular issue. It is not difficult to imagine the chilling effect that would have on private attorneys' willingness to participate in unpopular cases. Moreover, allowing third parties to sue private attorneys has the potential to interfere with the attorney's relationship with their own client. Rather than zealously represent their own client, private attorneys would be incentivized to consider their own legal exposure to claims made by a third party.

Furthermore, the safeguards built into the judicial process police the conduct of private attorneys as much as (if not more than) prosecutors. As with prosecutors, the assertions of private attorneys are contested by their adversaries. Private attorneys are also held to a code of ethics, for which violations are subject to sanctions from the Bar or from the presiding judge in the given case. And (unlike prosecutors), private attorneys are subject to malpractice suits from their own clients and loss of business if they act unethically when performing advocacy functions.

No. 23-11184

Accordingly, because private attorneys are advocates—who share the same functions, vulnerabilities to litigious third parties, and restraints inherent in the judicial process, as prosecutors do—we find the L&L attorneys are absolutely immune from Relator's federal claims. We make clear that our holding is a narrow one. Private attorneys are immune from claims filed by third parties for their activities as advocates. Of course, private attorneys are not immune from suit for actions filed by their own clients, nor are they immune from suit for activities unrelated to their advocacy.

### B. Texas Law

Texas provides absolute immunity to attorneys for conduct that is within the scope of representation. "Texas common law is well settled that an attorney does not owe a professional duty of care to third parties who are damaged by the attorney's negligent representation of a client." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). "However, Texas courts have developed a more comprehensive affirmative defense protecting attorneys from liability to non-clients, stemming from the broad declaration over a century ago that 'attorneys are authorized to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages.'" *Id.* (citation omitted). Accordingly, "attorneys are immune from civil liability to non-clients 'for actions taken in connection with representing a client in litigation.'" *Id.* (citation omitted). Even wrongful conduct is "not actionable if it is part of the discharge of the lawyer's duties in representing his or her client." *Id.* (quotation and citation omitted). "Conversely, attorneys are not protected from liability to non-clients for their actions when they do not qualify as 'the kind of conduct in which an attorney engages when discharging his duties to his client.'" *Id.* at 482 (citation omitted).

No. 23-11184

Relator's claims undoubtedly relate to L&L's representation of the Affiliate Defendants in their efforts to retain their Medicaid status in Texas. Relator's claims can properly be categorized as litigation strategy. Choosing to litigate instead of exercising administrative appeal rights, choosing to negotiate a grace period, and filing a lawsuit, are all legal strategies. "An attorney is given latitude to pursue legal rights that he deems necessary and proper[,]" *id.* at 483, and even if "wrong," the action taken is still immune under Texas law when the action taken is within the scope of the representation, *id.* at 481. *See also Troice v. Greenberg Traurig*, 921 F.3d at 506 (explaining that attorney immunity applies outside the litigation context where attorneys routinely "practice and advise clients in non-litigation matters"). Even if Relator's claims could arguably be classified as alleging fraud, "[f]raud is not an exception to attorney immunity" when it is within the scope of an attorney's legal representation of his client. *Cantey Hanger*, 467 S.W.3d at 483; *see also Troice v. Greenberg Traurig*, 921 F.3d at 507 ("[I]mmunity can apply even to criminal acts so long as the attorney was acting within the scope of representation."). Because none of the conduct alleged can be deemed to be outside the scope of the L&L attorneys' representation of the Affiliate Defendants, the L&L attorneys are entitled to immunity under Texas law.

## C. Louisiana Law

Louisiana law tracks Texas law except that there is an exception for conduct done with specific malice or for intentional torts.[9] Here, Relator makes no argument or allegations of specific malice or intentional tort regarding the L&L attorneys' representation of the Affiliate Defendants.

---

[9] *See* discussion *supra* Section I.C.

No. 23-11184

Accordingly, the L&L attorneys are entitled to immunity under Louisiana law for the same reasons they are entitled to immunity under Texas law.

## IV. Respondeat Superior Liability

The district court determined that attorney immunity did not apply to PPFA because Relator sued PPFA on a respondeat superior theory rather than the L&L attorneys directly. Now that we have determined that the L&L attorneys would be entitled to immunity, we must determine if PPFA can assert that immunity even though the L&L attorneys are not a party to this suit.

In *New Orleans & N.E.R. Co. v. Jopes*, the Supreme Court looked at a case where the defendant was entitled to immunity for acting in self-defense and stated that "[i]t would seem on general principles that, if the party who actually causes the injury is free from all civil and criminal liability therefor, his employer must also be entitled to a like immunity." 142 U.S. 18, 24 (1891). "[I]t may be generally affirmed that, if an act of an employe[e] be lawful, and one which he is justified in doing, and which casts no personal responsibility upon him, no responsibility attaches to the employer therefor." *Id.* at 27 (finding that because the employee was free from fault, so was the employer); *see also Johnson v. Sawyer*, 47 F.3d 716, 730 (5th Cir. 1995) ("[U]nder the FTCA, the United States is not liable if the private employer would not be liable pursuant to local law.").

Texas law likewise does not permit respondeat superior liability against an employer unless the employee's conduct is actionable. "It is well established that where the employer's liability rests solely on respondeat superior, an adjudication acquitting the employee of negligence will stand as a bar to a subsequent suit against the employer." *Knutson v. Morton Foods, Inc.*, 603 S.W.2d 805, 807 n.2 (Tex. 1980) (quoting *Hammonds v. Holmes*, 559 S.W.2d 345 (Tex. 1977)); *see also DeWitt v. Harris Cnty.*, 904 S.W.2d 650,

654 (Tex. 1995) (concluding that a governmental entity may not have respondeat superior liability under the Texas Tort Claims Act "for the negligence of its employee when the employee has no liability because of official immunity").

Louisiana law follows suit. "Like other employment-related scenarios, an employer's liability is premised on a cognizable claim against the employee." *Jameson v. Montgomery*, 366 So. 3d 1210, 1216 n.7 (La. 2023). "Vicarious liability arises from La. C.C. art. 2320, which imposes liability on employers" for damages by employees in the scope of employment. *Id.* "Where an employee is accorded immunity, necessarily, his employer cannot be held vicariously liable for his actions or inactions." *Id.*

The district court was correct in its finding that the remaining claims against PPFA, the implied-false-certification claim and the conspiracy claim, "turn in whole or in part on L&L attorneys' advice . . . and accordingly attorney immunity affects all the remaining claims as to PPFA." But it was incorrect in not granting PPFA summary judgment on these claims. Because federal, Texas, and Louisiana law do not permit respondeat superior liability where the underlying employee is immune, PPFA cannot be held liable. Summary judgment should be granted to PPFA on the remaining claims to the extent they turn on the actions or advice of the L&L attorneys.

## V. Effect of FCA and State Law Analogues on Attorney Immunity

The district court also found that attorney immunity does not apply because the FCA, TMFPA, and the LMAPIL, override attorney immunity. This was error. Common law defenses apply unless explicitly excluded by statute.

It is a longstanding principle that "statutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the

No. 23-11184

contrary is evident." *United States v. Texas*, 507 U.S. 529, 534 (1993) (quoting *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952)) (cleaned up). "In order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law." *Id.* (citation omitted). Nothing in the FCA directly omits the privilege or defense of attorney immunity. *See* 31 U.S.C. § 3729 *et seq.*

Similarly, under Texas law "[c]ommon law defenses may be abrogated by statute." *Troice v. Greenberg Traurig*, 921 F.3d at 507. "Statutes purporting to abrogate common law principles, though, must do so either expressly or by necessary implication." *Id.* (quotation amended) (quoting *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 428 (Tex. 2017)). "Courts must look carefully to be sure the Texas Legislature intended to modify common law rules." *Id.* at 507–08 (quotation amended) (quoting *Energy Serv. Co. of Bowie, Inc. v. Superior Snubbing Servs., Inc.*, 236 S.W.3d 190, 194 (Tex. 2007)). Nothing in the TMFPA purports to abrogate attorney immunity, either expressly or by necessary implication. *See* Tex. Hum. Res. Code Ann. § 36.002.

Finally, Louisiana appears to follow suit. "[W]e note the 'long line of jurisprudence [holding] that those who enact statutory provisions are presumed to act deliberately and with full knowledge of existing laws on the same subject, with awareness of court cases and well-established principles of statutory construction, with knowledge of the effect of their acts and a purpose in view[.]'" *Jameson*, 366 So. 3d at 1225 (quoting *Borel v. Young*, 989 So. 2d 42, 48 (La. 2008)). "Certain immunities were so well established in 1871 . . . that 'we presume that Congress would have specifically so provided had it wished to abolish' them." *Id.* (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993)) (cleaned up). "For decades, courts of this state have consistently dismissed claims against prosecutors based on the doctrine of absolute prosecutorial immunity. The lack of any legislative change to this

No. 23-11184

statute confirms that absolute prosecutorial immunity remains a valid doctrine under Louisiana law." *Id.* Similarly, nothing in the LMAPIL specifically abrogates private attorney immunity under these circumstances. *See* La. Rev. Stat. § 46.438.3.

In concluding that the FCA and its state analogues override attorney immunity, the district court looked to *United States v. Hangar One, Inc.*, 563 F.2d 1155 (5th Cir. 1977), where this court held "that a corporation will be liable for violations of the False Claims Act if its employees were acting within the scope of their authority and for the purpose of benefitting the corporation." *Id.* at 1158. The "liability of a corporation for a False Claims Act violation may arise from the conduct of employees other than those with 'substantial authority and broad responsibility.'" *Id.* While true, this has nothing to do with the applicability of attorney immunity, which applies here because none of the statutes preclude the defense.[10]

Thus, without clear indication in the FCA or its state analogues that the legislatures intended to abrogate long existing common-law attorney immunity, it is available to PPFA, and Relator cannot sustain a claim for respondeat superior liability where the underlying employees have immunity. Accordingly, PPFA should be granted summary judgment on the remaining claims that turn on the actions of its L&L attorney-employees.

## CONCLUSION

For the reasons stated herein, we DENY Relator's Motion to Dismiss this appeal. We REVERSE and REMAND to the district court with

---

[10] For example, just because an employee could be held liable, does not mean they will be held liable. Nothing in the statute precludes PPFA from asserting the defense of attorney immunity which has long been recognized by our courts. Perhaps if the conduct at issue was not that of attorneys, or any official who can assert immunity such as a judge, a different outcome would result, but that is not the case here.

instruction to grant PPFA summary judgment on the remaining claims turning on the actions of its L&L attorney-employees.